**UNITED STATES v. ULLMAN et al.**
**(two cases).**

**Civ. A. Nos. 14963, 14964.**

United States District Court
E. D. Pennsylvania.

Oct. 22, 1953.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, F. A. Michels, Sp. Assts. to Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., William C. Thompson, Asst. U. S. Atty., for plaintiffs.

Walter B. Gibbons, Philadelphia, Pa., for defendant United Benefit Life Ins. Co.

CLARY, District Judge.

The above two cases are before the Court on motions by the United States to set aside and vacate that portion of the decree of interpleader entered in each case which allowed costs and attorneys' fees to the United Benefit Life Insurance Company, defendant. No question has been raised as to the propriety of the decree of interpleader, and any question as to the reasonableness of the amounts of counsel fees awarded in each case was expressly waived by the Government at the argument of the motions. Only one legal question is in issue and to put that question in its proper setting a review of the facts is necessary.

The Commissioner of Internal Revenue reviewed the income tax returns of Herman Ullman, defendant in Civil Action No. 14963, for the years 1945, 1946 and 1948. Contending that false and fraudulent returns had been made, the

Commissioner early in September of 1951 assessed deficiency taxes against him in the amount of $87,810.41 for the years in question. On September 12, 1951, liens for said taxes were filed in this Court and in the Court of Common Pleas of Berks County, the residence of the said Herman Ullman. Attempting to foreclose the liens, the Government instituted the present action against Herman Ullman, his wife Julia Ullman, and the United Benefit Life Insurance Company. The complaint alleges that on August 23, 1947, Herman Ullman purchased from the said insurance company a twenty year endowment, single premium, life insurance policy, face value of which was $50,000. The cost of the policy to defendant was $32,527 and the beneficiary of the policy was his wife, Julia Ullman, the third defendant. The Government in this action claims the surrender value of said policy, which has since been determined to be $33,732.77.

Civil Action No. 14964 is a suit by the United States to foreclose similar liens against Theodore Ullman and to recover income taxes allegedly due from him in the sum of $89,141.49 for the years 1945 to 1948, inclusive. The complaint in that case avers that defendant Theodore Ullman on August 31, 1947 purchased from the United Benefit Life Insurance Company a $50,000 twenty year endowment policy for the sum of $33,284.50, his wife Lillian being beneficiary. The Commissioner of Internal Revenue, after review of his returns for the years in question, made his assessment of the deficiency allegedly due early in September of 1951 and likewise filed income tax liens in this Court and in the Court of Common Pleas of Berks County on September 12, 1951. In the second action, the Government has also made the Fidelity-Philadelphia Trust Company of Philadelphia, Pennsylvania, a defendant for the reason that the policy in question was assigned to it on February 9, 1951 as security for a loan of some $23,000. The two Ullmans and their wives have filed answers denying that any fraudulent returns were made, denying that any

taxes are owed by them to the United States for the years in question, and further averring that there have been filed and are presently pending in the United States Tax Court petitions for redetermination of income taxes due for the years in question. The Fidelity-Philadelphia Trust Company has also answered averring that the assignment of the policy to it was for money loaned and that its claim on the proceeds antedated the claim of the Government and is superior to it. On the other hand, the United Benefit Life Insurance Company answered in each case stating that the cash surrender value was claimed from it not only by the Government but by the other defendants, that it had no interest in the proceeds and therefore filed its counterclaims in interpleader relinquishing any claim to the proceeds of the policies and asking permission of the Court to pay the money into the registry of the Court and to interplead the several claimants.

After a hearing, upon due notice to all parties, the prayers of the two petitions for interpleader were allowed. The money was paid into the registry of the Court and the United Benefit Life Insurance Company was discharged from any further liability in the case. As part of the order of interpleader in each case, the Court allowed costs and an attorney's fee to the United Benefit Life Insurance Company out of the fund paid into Court. The only part of those orders which the United States now contests is the allowance of costs and attorneys' fees to the Insurance Company, the United States taking the position that the Court is without power to make any such allowance on the legal principle that in so doing the Court would *in effect* be allowing costs and attorneys' fees against the United States.

The argument of the Government in this respect is principally based on Title 28 U.S.C. Section 2412 which provides:

"(a) The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress.

"(b) In an action under subsection (a) of section 1346 or section 1491 of this title, if the United States puts in issue plaintiff's right to recover, the district court or Court of Claims may allow costs to the prevailing party from the time of joining such issue. Such costs shall include only those actually incurred for witnesses and fees paid to the clerk.

"(c) In an action under subsection (b) of section 1346 of this title, costs shall be allowed in all courts to the successful claimant, but such costs shall not include attorneys' fees."

Section 2412 must be viewed and analyzed in the light of the Act of which it is a part. Chapter 161 of the United States Code is a comprehensive act which sets out in detail the terms and conditions under which claims by or against the United States are to be litigated. Among its provisions are the time for commencing action against the United States, the prohibition against requiring security by the United States. It also governs actions affecting property on which the United States has a lien, garnishment, interest, costs, execution in favor of the United States, and payment of judgments against the United States. Section 2412, therefore, is only one of the many provisions relating to the United States as a party to an action in a Federal Court. The only applicable provision upon which the Government can rely in Section 2412 is subsection (a) which provides that the United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress. Section 1346 of Title 28, referred to in Section 2412 in subsection (a)(1), provides for suits against the United States, for the recovery of claims for taxes; subsection (a)(2), any civil claim not sounding in tort against the United States not exceeding $10,000. Subsection (b) of Section 1346 is the Federal Tort Claims Act providing for suits against the United States for the negligence or wrongful act or omission of any employee of the Government acting within the scope of his employment under circumstances where the United States, if a private person, would be liable. Section 1491 of Title 28, also referred to, merely establishes the jurisdiction of the Court of Claims. It will be noted that subsection (c) of Section 2412 merely provides that the United States shall pay costs if held liable in a Tort claim but prohibits the allowance of attorneys' fees in addition to the recovery which practice, except in a few States, is the ordinary common law or statutory practice.

On the other hand, in Section 2405 covering garnishment of the funds of a corporation in the hands of a debtor, it is provided that no judgment shall be entered against any garnishee until after judgment has been rendered against the corporation, nor until the sum in which the garnishee is indebted is actually due. Section 2410 covering actions affecting property on which the United States has a lien does not attempt to give the United States a priority over any other valid prior lien. However, it does give the Government the right, in a sale made to satisfy a lien prior to that of the United States, to redeem the real estate within one year from the date of sale. It further provides that the Comptroller General may release either real or personal property from a lien of the United States where it is made clear that a sale of such property under a prior lien will not bring sufficient funds to either wholly or partly satisfy the lien of the United States. There is nothing, therefore, in this section which indicates an intent on the part of Congress to prefer the United States and assert rights in a judicial action superior to those of a private litigant.

■ Since this is an action by the United States, the provisions of the Federal Interpleader Act, Title 28 United States Code, Section 1335, and Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C., are applicable. There is also present here in each case diversity of citizenship between the insurance com-

pany and the other claimants to the fund. The amount in controversy likewise exceeds $500. In the interpretation of this Act it was held in the case of Mutual Life Ins. Co. of New York v. Bondurant, 6 Cir., 1928, 27 F.2d 464, certiorari denied 278 U.S. 630, 49 S.Ct. 30, 73 L.Ed. 548, that whatever costs and fees would be allowable to an insurer in an interpleader brought irrespective of the statute would also be allowable in actions brought thereunder. The Court said, 27 F.2d at pages 465, 466:

> "It is well settled that a stakeholder, who brings the nonstatutory equity interpleader bill, is entitled to reasonable attorney's fees, as well as other costs. McNamara v. Provident Sav. Life Assur. Soc. of New York [5 Cir.] 114 F. 910; Louisiana State Lottery Co. v. Clark, C.C., 16 F. 20. The Interpleader Act effects no important change in the *substantive rights* of parties to an interpleader suit; it merely enlarges the jurisdiction of federal courts over the necessary parties to certain interpleader suits. Nothing in the language or in the history of this essentially jurisdictional act evidences an intent that the rules as to costs and attorney's fees in a statutory interpleader should be different from those that prevail in the ordinary equity interpleader whether it be in the federal or state courts."

Since the decision in the Bondurant case, supra, the propriety of allowance of costs and attorney's fees out of a fund deposited with the court has apparently never been questioned. See Treinies v. Sunshine Mining Co., 9 Cir., 99 F.2d 651; Id., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Mutual Life Ins. Co. of New York v. Bondurant, supra; Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551; New York Life Insurance Co. v. Miller, 8 Cir., 139 F.2d 657; Globe. Indemnity Co. v. Puget Sound Co., 2 Cir., 154 F.2d 249.

The simple legal question to be determined in these two actions is, therefore, whether an award of counsel fees and costs may be granted in an interpleader action to a disinterested third party stakeholder who interpleads the United States and other claimants to a fund. The United States Attorney frankly concedes that insofar as his research and that of the Department of Justice indicates this is a matter of first impression. The argument of the Government, however, is that since the funds in question *may*, after the present litigation is concluded, be declared to be the property of the United States, the net result of any present allowance would in effect be an imposition of costs and attorneys' fees against the United States which in the absence of specific Congressional authority provided for in Section 2412(a) this Court is without authority to make. In other words, it argues that the Court is bound to *treat* the funds as if presently owned by the United States. The Government, however, frankly concedes that legal title to the funds presently in the registry of this Court is in the other claimants and not in the United States. It asks the Court to draw from the language of Section 2412(a) a preference in favor of the United States in interpleader actions although frankly conceding that as between private litigants the award made would be without question proper under equitable principles. In support of its contention the Government relies in its supporting memorandum on only three cases, Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960; The Antelope, 12 Wheat. 546, 548, 6 L. Ed. 723; Leary v. United States, 253 U.S. 94, 40 S.Ct. 446, 64 L.Ed. 798. The first two cases afford no assistance in the determination of this issue. The principle there enunciated is that costs are not taxable to the United States, which principle of law is not here in dispute. The case of Leary v. United States is likewise inapposite. The facts of the Leary case, see United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769, clearly disclose that the fund, out of which costs and attorney's fee were requested, was actually at the time the requests were made the property of

the United States. This, of course, completely distinguishes the Leary case from the instant actions, since the Government frankly admits that the funds in question here are not now its property. Clearly, under present statutes, if in Civil Action No. 14963 Herman Ullman should prevail against the claim of the Government, no attorney's fee could be charged to the Government. The Government, however, by its motion attempts to place the innocent stakeholder in the same category as an adversary claimant and contends that the Court is without equitable power, where the Government is a claimant to a fund, to make proper allowances in accordance with accepted equitable principles.

█ I read no such meaning or draw no such inference from the plain language of Section 2412(a). The Congress, in its wisdom, has waived sovereign immunity against suits, but wisely chose to limit the extent to which the public treasury should be charged, in suits to which the United States is a party, for costs and attorneys' fees of litigation, reserving to itself the right to determine when and under what circumstances such payments should be made. There is nothing in the language of the statute which would warrant the Court in penalizing an innocent stakeholder simply because the United States happens to be a party to the litigation. A holding as contended for by the Government would engraft by decisional law a preference in favor of the United States not specifically provided for by Congress and unwarranted on equitable principles. That the sum ultimately recovered by the United States might be slightly diminished is of no moment. It is still the property of the defendant. It would be an extremely strained construction of words to describe that slight diminution as costs and attorneys' fees taxed against the United States. I cannot and will not so construe the plain language of the statute. Rather do I believe that this case merits the application of the equitable principles underlying all interpleader actions.

An appropriate order will be entered in each case denying the motions of the Government.