**UNITED STATES of America,
Appellant,**

v.

**L. C. CHAPMAN et al., Appellees.**

**No. 6108.**

United States Court of Appeals
Tenth Circuit.

July 29, 1960.

Rehearing Denied Aug. 23, 1960.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, and George F. Lynch, Attys., Dept. of Justice, Washington, D. C., Paul W. Cress, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., were with him on the brief), for appellant.

Walter J. Arnote, McAlester, Okl. (James B. Bratton and John A. Allford, McAlester, Okl., were with him on the brief), for appellee McAlester Finance Corp.

Granville Tomerlin, Oklahoma City, Okl. (T. L. Blakemore, Sapulpa, Okl., T. H. Eskridge, Tulsa, Okl., John F. Butler, Joe W. Whitten, Oklahoma City, Okl., Winfrey D. Houston, Robert M. Murphy, Stillwater, Okl., and Russell E. Moss, Tulsa, Okl., were with him on the brief), for appellees Labor and Material Suppliers.

No appearance for appellees Southwestern Bell Tel. Co. and R. J. Sims.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The issue is whether the United States has a tax claim which takes precedence over other claims to a fund deposited by Southwestern Bell Telephone Company in an interpleader action. The trial court held that a retained percentage of funds due under a construction contract, which was not payable to the contractor-taxpayer until labor and material claims were satisfied, was not property subject to a federal tax lien and that an assignee for security of construction contracts was a purchaser whose rights were not affected by the tax claims. The payment of the laborers, materialmen, and assignee exhausted the deposited fund and left nothing for the United States, which has appealed.

The Telephone Company contracted with R. J. Sims for certain construction work in Oklahoma. Upon the completion of the work Sims left unpaid bills in the amount of $20,151.75, incurred before August 13, 1957, for labor and materials. To secure payment of loans, Sims, by a general assignment made December 19, 1955, and a special assignment made July 3, 1957, assigned to McAlester Finance Corporation his contracts with the Telephone Company. The unpaid balance was $11,697.66, plus interest and attorney's fees. Assessments of unpaid withholding and excise taxes were made against Sims in the period March 18–November 19, 1957, and notices of lien were filed August 6–November 20, 1957, in the total sum of $24,601.09.

The contracts between the Telephone Company and Sims all contained the following pertinent provisions:

"Article VII

" * * * The Telephone Company agrees to pay the Contractor [Sims] on the twentieth day of each month for 90% of the amount of completed approved work on the first day of the month and agrees to make final payment within ten (10) days after the completion and acceptance of all work by the Telephone Company.

\* \* \* \* \* \*

"Article X

"The Telephone Company shall have the right to require satisfactory proofs of payment, by the Contractor, of all labor and material furnished under this contract, before acceptance of the work, but no action or non-action of the Telephone Company in requiring such proofs shall relieve the Contractor of the duty of causing any and all liens arising out of the contract to be fully satisfied and discharged."

Upon the completion of the work the retained percentage amounted to $27,-183.70, and was not paid to Sims because he failed to establish payment of labor and material furnished under the contracts. The Telephone Company brought an interpleader action under 28 U.S.C. § 1335 and paid the retained sum into court. Named as defendants were Sims, the holders of the claims for labor and materials, and the Finance Company. The United States intervened asserting its tax claims.

The Finance Company takes the position that the labor and material claims must first be satisfied out of the fund and that it is then entitled to be paid. The United States contends that its tax claims must be satisfied before any payment may be made out of the fund to the laborers, the materialmen, or the Finance Company.

Under §§ 6321 and 6322 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 6321, 6322, the United States has a tax lien upon "all property and rights to property" of the taxpayer at the time of the assessment of the unpaid tax.[1] The

---

1. Section 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that

United States says that the retained percentage was property of the taxpayer to which its lien attached.

In Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 1285, the unpaid balance of a general construction contract was claimed by subcontractors who had supplied labor and materials and who had asserted a lien under New York law. The United States asserted that its tax liens under §§ 3670 and 3671 of the Internal Revenue Code of 1939, 26 U.S. C.A. §§ 3670, 3671 [2] took precedence. The New York Court of Appeals, 3 N.Y. 2d 511, 169 N.Y.S.2d 9, 146 N.E.2d 774; 4 N.Y.2d 869, 174 N.Y.S.2d 236, 150 N.E.2d 707, upheld the tax claim and the United States Supreme Courts reversed, holding that state law controls in the determination of the nature of the legal interest which the taxpayer had in the property sought to be reached by the United States in asserting its tax claim. Federal law determines the priority of competing liens asserted against the taxpayer's property or rights to property. As the New York court did not determine the nature of the property rights possessed by the taxpayer under state law, the case was remanded so that such court could "ascertain the property interests of the taxpayer under state law and then dispose of the case according to established principles of law." [80 S.Ct. 1281]

United States v. Durham Lumber Company, 363 U.S. 522, 509, 80 S.Ct. 1282, 1285, 4 L.Ed. 1371, decided the same day as the Aquilino case, involved competing claims of the United States for unpaid withholding and unemployment insurance taxes, and of certain subcontractors under a general construction contract. The taxpayers were adjudicated bankrupt and at the time of such adjudication there was an unpaid balance due under the construction contract. This sum was paid to the trustee and the claims were resolved in the bankruptcy proceedings. The Court of Appeals for the Fourth Circuit held that under North Carolina law, except to the extent that the claim of the general contractor exceeded the claims of the subcontractors, the general contractor had no property right which is subject to seizure under the tax lien [3] and, hence, the United States could recover only so much of the unpaid balance as remained after the satisfaction of the subcontractors' claims. The United States Supreme Court affirmed on the authority of the Aquilino decision.

There are important differences between these two recent cases and the one now under consideration. In the Aquilino case the subcontractors contended that under the New York lien law [4] the contractor-taxpayer had no property interest in the balance unpaid by the owner under the construction contract. The Durham Lumber Company case involved North Carolina statutes which expressly create a lien in favor of subcontractors, which is preferred over that of general contractors, and create a primary obligation on the part of the owner to assure the payment of subcontractors.[5]

In the instant case, the labor and material claimants are aided by no such statutes. It is conceded that Southwestern Bell Telephone Company is a public service corporation within the intent of the

---

may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 6322 provides that the lien arises at the time the assessment is made.

2. These sections are identical in all important respects to §§ 6321 and 6322 of the 1954 Code.

3. United States v. Durham Lumber Company, 4 Cir., 257 F.2d 570, 574.

4. McKinney's N.Y.Laws, Lien Law (1958 Supp.), § 36–a. See Aquilino v. United States, supra, note 2.

5. General Statutes of North Carolina, §§ 44–6 to 44–12. See United States v. Durham Lumber Company, 257 F.2d 572–573.

Oklahoma Constitution,[6] and that public policy forbids a mechanic's lien against the property of such a corporation when that property is essential to the performance of public purposes.[7] Further, Oklahoma has no statute such as the New York lien law considered in the Aquilino case, which creates a trust fund in favor of subcontractors and permits an action by a subcontractor upon an obligation for moneys due to a general contractor, as well as moneys received by him. Nor has Oklahoma a statute similar to the North Carolina statute, before the court in the Durham Lumber Company case, which permits a subcontractor to bring a direct, independent action against the owner to the extent of any amount due under a construction contract.

More important than these statutory differences is the difference in the construction contracts. In Aquilino and Durham Lumber Company there was no point raised on the obligation of the owner to pay the balance due on the construction contract. For all that appears in those opinions the obligation to pay was absolute. Here the obligation is dependent upon the satisfaction of a condition precedent, namely, the proof of payment for labor and materials. Article VII of the contract between the Telephone Company and Sims requires the Telephone Company to pay the retained percentage after "completion and acceptance of all work by the Telephone Com-pany." Article X gives the Telephone Company the right to require satisfactory proofs of payment for all labor and material "before acceptance of the work." Such proofs were never furnished and the Telephone Company never accepted the work. Sims, the contractor-taxpayer, could not compel the Telephone Company to pay the retained percentage to him because of his failure to pay the laborers and materialmen.

■■ As said in Aquilino, the federal statute creates no property right but attaches federally defined consequences to rights created under state law. The right to property which the United States asserts is covered by its lien is the right of Sims to compel payment by the Telephone Company of the retained percentage. That right does not exist because of the failure to pay the labor and material claims. The Oklahoma rule is that conduct of a party which dispenses with performance by the adverse party is equivalent to a waiver of the right to require performance.[8] This accords to the general rule, recognized in Oklahoma, that contracts must be performed according to their terms before recovery can be had thereon.[9] As the contractor-taxpayer had no enforceable right to the money covered by the retained percentage, there was no property or right to property to which the tax lien of the United States attached,[10] except to the

6. Constitution of Oklahoma, Art. 9, § 34.

7. Pittsburg Equitable Meter Co. v. Cary, 10 Cir., 67 F.2d 65, and Oklahoma decisions therein cited.

8. Quinette v. Mitschrich, 109 Okl. 281, 235 P. 530, 531; Vogel v. Fisher, 203 Okl. 657, 225 P.2d 346, 347; and Owens v. Automotive Engineers, 208 Okl. 251, 255 P.2d 240, 247.

9. Camp v. Black Gold Petroleum Co., 195 Okl. 30, 154 P.2d 769, 771; Messick v. Johnson, 167 Okl. 463, 30 P.2d 176, 178. See also Miller v. Young, 197 Okl. 503, 172 P.2d 994, 995, and Rollins v. Rayhill, 200 Okl. 192, 191 P.2d 934, 937.

10. General Insurance Company of America v. Ted Price Construction Company, D.C. Idaho 1959, 175 F.Supp. 261, 263; Wol-verine Insurance Company v. Phillips, D.C.N.D.Iowa 1958, 165 F.Supp. 335, 353 et seq.; and, Central Surety and Insurance Corporation v. Martin Infante Co., D.C.N.J.1958, 164 F.Supp. 923, 927, affirmed 3 Cir., 272 F.2d 231. The opinion in Scott v. Zion Evangelical Lutheran Church, 75 S.D. 559, 70 N.W.2d 326, refers to many federal and state decisions bearing on this point. Cf. United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118, 121–122. If United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232, be considered contra, the authoritative value of that case is weakened if not destroyed by the later decision of that circuit in Fidelity and Deposit Company of Maryland v. New York City Housing Authority, 2 Cir., 241 F.2d 142.

extent that the retained percentage exceeded the labor and material claims.

The United States attempts to avoid this weakness in its position by arguing that as the labor and material claimants have no lien under Oklahoma law and as they cannot sue the Telephone Company because of lack of privity of contract [11] they have no enforceable right to the fund which can defeat the tax claim of the United States. This is but another way of saying that the United States may rely on the weakness of the competing title.

■ This is a federal interpleader action [12] and the fund has been paid into court. Right to recover from the fund must be based on the strength of a claimant's title and not on the weakness of the title of another claimant.[13] As the United States stands in the shoes of the contractor-taxpayer and can have no greater rights to the fund than he has, the tax claim may be asserted only against that portion of the fund remaining after the satisfaction of the claims for labor and materials.

Unlike the United States, the Finance Company takes the position that the labor and material claims are superior to its claim. At the same time it says that if those claimants have no rights under the provisions in the Telephone Company contracts, then the Finance Company is entitled to full payment of its claim before the tax claim is paid. This makes it necessary to determine the rights of labor and material claimants to recover from the deposited fund.

■ Following a long line of federal decisions,[14] Oklahoma has held that laborers and materialmen have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors and that when a surety pays such claims it is subrogated to the rights of the laborers and materialmen and its right to recover from the fund takes precedence over an assignment of the fund by the contractor.[15] This same rule should apply to a construction contract of a public utility for property needed in the public service. Also, if a subrogee has such right, certainly the subrogor has it too. As Oklahoma has recognized this equitable right, it follows that the labor and material claimants here have the right to secure payment from the fund and this right is superior to that of the assignee Finance Company.

The next question is whether the United States or the Finance Company may recover the $6,945.49 remaining in the deposited fund after the satisfaction of the labor and material claims. The tax lien created by § 6321 arises at the time of the assessment of unpaid taxes,[16] unless the competing claims are within § 6323(a), 26 U.S.C.A. § 6323(a), which provides that the lien imposed by § 6321 shall not be valid "as against any mortgagee, pledgee, purchaser, or judgment creditor" until notice shall have been filed as therein provided. The Finance Company asserts that it is a purchaser within the intent of § 6323(a) and that its claim must prevail over the tax

11. Alberti v. Moore, 20 Okl. 78, 93 P. 543, 14 L.R.A.,N.S., 1036; Union Bond & Investment Co. v. Bernstein, 40 Okl. 527, 139 P. 974; Newman v. Kirk, 164 Okl. 147, 23 P.2d 163; and Conservation Oil Co. v. Graper, 173 Okl. 127, 46 P.2d 441.

12. See 28 U.S.C. § 1335 and Rule 22, F.R.Civ.P., 28 U.S.C.

13. This is the general rule followed in state courts. See Curran v. Williams, 352 Mich. 278, 89 N.W.2d 602, 604; Slavin v. Slavin, 368 Pa. 559, 84 A.2d 313, 317; Prudential Ins. Co. of America v. Cahill, 321 Ill.App. 45, 52 N.E.2d 481,

484; Denton Gin Co. v. Gathings, Mo. App., 216 S.W.2d 959, 965; 48 C.J.S. Interpleader § 41, p. 92; 30 Am.Jur., Interpleader, § 27, p. 503. Cf. Shapleigh v. Mier, 299 U.S. 468, 475, 57 S.Ct. 261, 81 L.Ed. 355.

14. These are collected in Martin v. National Surety Co., 8 Cir., 85 F.2d 135, affirmed 300 U.S. 588, 57 S.Ct. 531, 81 L. Ed. 822.

15. Fidelity Nat. Bank of Oklahoma City v. United States Casualty Co., 191 Okl. 496, 131 P.2d 75, 77, 78.

16. 26 U.S.C. § 6322.

claims as the notices were filed after the assignments.

Here again we have the problem of the applicability of state law or federal law. As previously noted, Aquilino holds that, in the determination of the existence of property or property rights subject to a federal tax lien under § 6321, state law governs, while the decision of the relative rights of lien holders depends upon federal law. That case does not cover the point as to which law governs in determining the existence of the status of a mortgagee, pledgee, purchaser or judgment creditor, each of whom under § 6323 is not affected by a federal tax lien until notice thereof has been filed.

The problem is presented by the contention of the Finance Company that it is a purchaser under the law of Oklahoma. The Supreme Court of that state has held that under its statutes [17] every chose in action, not founded upon tort, is assignable and right of action is conferred upon the assignee.[18] A valid assignment passes the title of the assignor and, after assignment, the assignor has no interest to be reached by his creditor in any proceeding.[19] A possibility, coupled with an interest, is assignable.[20] The United States relies on the definition of purchaser stated in United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 247, 99 L.Ed. 271, where it is said that a purchaser within the meaning of § 3672, the predecessor of § 6323 of the 1954 Code, "usually means one who ac-quires title for a valuable consideration in the manner of vendor and vendee."

The distinction between vendor and vendee on the one hand and lienor and lienee on the other is controlling. The transaction between the Finance Company and the contractor-taxpayer was one in which the assignment of the contracts was given as security for a loan. In other words, it was a security transaction rather than a sale. This is made clear by the fact that the contractor-taxpayer gave the Finance Company a promissory note which was not satisfied by the assignment.[21]

The general rule is that an assignment given as security for a debt "gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured, although the assignment is absolute on its face." [22] The distinction between a lien and an assignment is that a lien is a charge upon property, while an assignment creates an interest in property.[23] While there appear to be no Oklahoma cases dealing with the legal effect of an assignment as security for a debt,[24] it is reasonable to conclude that the general rule would prevail and that the assignee does not receive a transfer of absolute title but, rather, a qualified interest in the assigned chose.

Both the United States and the Finance Company rely on Marteney v. United States, 10 Cir., 245 F.2d 135, 139, which held that an assignee was a pur-

17. 60 Okl.St.Ann. §§ 312 and 313 (1951).

18. Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okl. 180, 111 P. 326, 328.

19. Market Nat. Bank of Cincinnati, Ohio v. Raspberry, 34 Okl. 243, 124 P. 758, 759, L.R.A.1916E, 79. Cf. Oklahoma Oxygen Company v. Citizens State Bank and Trust Company of Kilgore, Texas, Okl., 274 P.2d 372, 373.

20. Harris v. Tipton, 185 Okl. 146, 90 P.2d 932, 934.

21. The trial court gave the Finance Company a judgment against the contractor-taxpayer for the balance due on the note which had not been satisfied by the award to the Finance Company out of the deposited fund.

22. 6 C.J.S. Assignments § 93, p. 1150, quoted in Peterman Lumber Company v. Adams, D.C.W.D.Ark.1955, 128 F.Supp. 6, 13.

23. Springer v. J. R. Clark Co., 8 Cir., 138 F.2d 722, 726; 6 C.J.S. Assignments § 2(7), p. 1049.

24. City Nat. Bank of Lawton v. Lewis, 73 Okl. 329, 176 P. 237, 240, distinguishes between an assignment and a pledge and holds that "an essential feature of an assignment is the transfer of title."

chaser within the intent of § 3672 of the 1939 Code. In that case there was an absolute and unqualified assignment of an interest in a judgment in return for the cancellation of the assignor's liability on a promissory note. This court said, at page 138, that "a sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." [25] The distinction between Marteney and the case at bar is that in Marteney the assignment extinguished the liability on the promissory note, whereas here the liability on the note remained and the assignment was given merely to secure payment.

We conclude that the assignment did not make the Finance Company a purchaser within the meaning of § 6323. Instead it is a lienor. At the time of the filing of the notices of the federal tax lien, the lien of the Finance Company was inchoate and had not been perfected. Not only had no action been taken to perfect the lien but, also, the amount of the debt to be collected from the security had not been determined.[26]

The perfected lien standard, which has been imposed by the Supreme Court in cases involving liens under state law in competition with federal tax liens, is fatal to the claim of the Finance Company. While only one such decision involves an assignment given as security for a debt,[27] that decision, United States v. R. F. Ball Construction Co. Inc., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, rehearing denied 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763, is controlling here. There, as in the case at bar, the plaintiff brought an interpleader action in which moneys due under a construction contract were paid into court. A bonding company claimed under an assignment given as security to assure payment of a contingent indebtedness which did not arise until after the filing of the notice of the federal tax lien. The trial court decided for the bonding company on the ground that the assignment as collateral security was a perfected contractual lien [28] and the Court of Appeals affirmed.[29] The Supreme Court, in a five to four decision, reversed saying that as the assignment involved was inchoate the provisions of § 3672(a) of the 1939 Code did not apply. In two recent district court decisions the Ball Construction Company decision has been applied in factual situations quite similar to that here under consideration.[30]

25. Quoting State of Iowa v. McFarland, 110 U.S. 471, 478, 4 S.Ct. 210, 28 L.Ed. 198.

26. The promissory note was for $14,774.47 and was due on July 15, 1957. At the time of the hearing in the lower court the amount unpaid was $11,697.66, plus interest and attorney's fees. There is no showing as to when the payments were made which reduced the face amount. Likewise there is no showing that the Finance Company received any of the monthly payments due under the construction contract.

27. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, and United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, were each concerned with an inchoate attachment lien. United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271, involved a landlord's distress lien. In United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, the question was whether the administrative assessment of ad valorem taxes gave a town the status of a judgment creditor. United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. White Bear Brewing Co., Inc., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, rehearing denied 351 U.S. 958, 76 S.Ct. 845, 100 L.Ed. 1480; United States v. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23; and United States v. Hulley, 358 U.S. 66, 79 S.Ct. 117, 3 L.Ed.2d 106, all involved mechanics' liens.

28. R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex.1956, 140 F.Supp. 60.

29. United States v. R. F. Ball Construction Co., 5 Cir., 239 F.2d 384.

30. First State Bank of Medford v. United States, D.C.Minn.1958, 166 F.Supp. 204, and Arthur Company v. Chicago Paints, Inc., D.C.Minn.1959, 175 F.Supp. 50. See also Three Mountaineers v. Ramsey, D.C.W.D.N.C.1956, 143 F.Supp. 888, and Massachusetts Bonding & Insurance Company v. Antonelli Construction Co., D.C.Mass.1959, 173 F.Supp. 391.

The Finance Company attempts to distinguish the Ball Construction Company decision from the instant case on the ground that Ball involved an assignment to secure a contingent or future indebtedness, whereas here the assignment was to secure a present and existing debt. This same point was raised in First State Bank of Medford v. United States, supra, and the court, while recognizing the distinguishing characteristic, disposed of the matter by saying "the distinction does not perfect an unperfected lien." [31]

Basically, the problem is whether the perfected lien principle, established in cases involving statutory liens, applies also to contractual liens. The acceptance of an assignment of moneys due under a contract as security for a loan is a common, legitimate commercial transaction. The significance of the difference between contractual and statutory liens and the problems inherent in the imposition of the perfected lien principle on financial arrangements of the type here involved must have been considered by the majority in the Ball Construction Company case as the dissent takes pains to point out these matters. We are bound by that decision. The fact that there the assignee was asserted to be a mortgagee under Texas law and here the contention is that the assignee is a purchaser under Oklahoma law is not important. The arrangement between the Finance Company and the contractor-taxpayer did not involve a vendor-vendee relationship as required by the Scovil decision to establish the assignee as a purchaser. The tax claims of the government take precedence over the assignment to the Finance Company and the United States is entitled to

a judgment for that portion of the fund remaining after the satisfaction of the claims of the laborers and materialmen, unless that sum is subject to reduction because of the award of attorney's fees and costs to the Telephone Company as plaintiff in the interpleader action.

Relying upon the Ball Construction Company decision and upon United States v. Liverpool & London & Globe Insurance Co., Ltd., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, counsel for the United States contend that the award by the trial court of costs and attorney's fees to the interpleader Telephone Company [32] was improper to the extent that the deposited fund was impressed with a federal tax lien. The Liverpool & London Ins. Co. case involved garnishment proceedings but the Ball Construction Company case was an interpleader action and the court said that the right to costs of the interpleader was controlled by the Liverpool & London Ins. Co. case. The propriety of the allowance of costs, including a reasonable attorney's fee, to a plaintiff in an interpleader action is well recognized,[33] but here this judicial prerogative collides with the supremacy of the federal tax lien. Under the Ball and the London & Liverpool cases, and under the decisions of the lower federal courts announced since those decisions, the innocent stakeholder, even though he asserts no rights to the fund in dispute, may not recover his costs and attorney's fees when to do so would invade the paramount federal tax lien.[34]

There appears to be no reported case involving a situation in which, as to part of the deposited fund, there is a right

31. 166 F.Supp. 209. A like contention was presented in Arthur Company v. Chicago Paints, Inc., supra, and determined adversely to the assignor.

32. The judgment in favor of the interpleader was for attorney's fee in the amount of $800.51 and costs of $15.00.

33. Mutual Life Ins. Co. of New York v. Bondurant, 6 Cir., 27 F.2d 464, 465, certiorari denied 278 U.S. 630, 49 S.Ct. 30, 73 L.Ed. 548; Treinies v. Sunshine Mining Co., 9 Cir., 99 F.2d 651, 655,

affirmed 308 U.S. 66, 60 S.Ct. 44, 84 L. Ed. 85, rehearing denied 309 U.S. 693, 60 S.Ct. 464, 84 L.Ed. 1034; New York Life Ins. Co. v. Miller, 8 Cir., 139 F.2d 657, 658; Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 154 F.2d 249, 250.

34. Commercial Standard Insurance Co. v. Campbell, 5 Cir., 254 F.2d 432, 433; Narragansett Bay Gardens, Inc. v. Grant Construction Co., D.C.R.I.1959, 176 F. Supp. 451, 454–456; and Ford Motor Co. v. Hackart Construction Co., D.C.N.J. 1956, 143 F.Supp. 216, 218–219.

superior to the tax lien. Yet that is the situation in the instant case and it presents the question as to the right of the interpleader to recover from that portion of the fund not awarded to the United States. The inviolability of a federal tax lien does not inure to the benefit of the labor and material claimants here. While it may seem inequitable to charge one group of claimants to a deposited fund with the expense of the innocent stakeholder and not similarly charge another claimant, such is the position taken by the government. It is supported by decisions which we are bound to obey.

The judgment is reversed with directions: (1) to award to the labor and material claimants the full amount of their claims, less the pro rata share of each in any award to the interpleader; (2) to award to the United States the amount of the deposited fund that remains after the deduction of the amounts due under the labor and material claims; (3) to determine the amount due the interpleader, if any, by way of costs and attorney's fees, and to provide the payment of that amount out of the share due the labor and material claimants; and (4) to take such further action as is consistent with the views herein expressed.