**SOUTH ADAMS SAVINGS BANK, Plaintiff,**

v.

**Paul A. MARTEL, Sr., Annette M. Martel, Internal Revenue Service, and Massachusetts Department of Revenue, Defendants.**

**Civil Action No. 07–30056–KPN.**

United States District Court, D. Massachusetts.

March 7, 2008.

John D. Lanoue, Stephen N. Pagnotta, Donovan & O'Connor, LLP, Adams, MA, Buffy Duringer Lord, Donovan & O'Connor, North Adams, MA, for Plaintiff.

Karen Wozniak, Robert J. Kovacev, U.S. Department of Justice, Washington, DC, Eileen Ryan Mcauliffe, Jeffrey S. Ogilvie, Massachusetts Department of Revenue Litigation Bureau, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER WITH REGARD TO MASSACHUSETTS DEPARTMENT OF REVENUE'S MOTION FOR SUMMARY JUDGMENT (Document No. 18), MASSACHUSETTS DEPARTMENT OF REVENUE AND SOUTH ADAMS SAVINGS BANK'S JOINT MOTION FOR ATTORNEY'S FEES AND COSTS (Document No. 23), and THE INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT (Document No. 24)*

NEIMAN, Chief Magistrate Judge.

Presently before the court are three motions arising out of this interpleader action commenced by South Adams Savings Bank (the "Bank") and the $65,316.53 deposited with the court on or about June 28, 2007, on which both the Internal Revenue Service ("the IRS") and the Massachusetts Department of Revenue ("DOR") have liens. The overriding question is whether or not the Bank is entitled to the attorney's fees and costs it incurred in bringing the action. The practical problem posed by the motions arises from the fact that payment to the Bank of its attorney's fees and costs, amounting to $6,734.97, together with payment of DOR's liens, whose priority to the federal liens is acknowledged by the IRS, would leave no funds left to be distributed to the IRS.

With the consent of all the parties that have appeared, this matter has been assigned to the undersigned for all purposes, including entry of judgment. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b). For the reasons that follow, the court will allow, without any objection, DOR's motion

for summary judgment insofar as it seeks to establish the priority of DOR's liens over the IRS's liens. (See Status Report (Document No. 22) ¶ 1.) The court will also grant the IRS's motion for summary judgment insofar as it seeks to prevent the payment of fees and costs to the Bank to the extent such payment would infringe upon the federal tax liens. Finally, the court will allow the Bank's motion for attorney's fees and costs, which DOR has joined, but only to the extent that a portion of the requested fees and costs will be paid out of DOR's share of the fund.

## I. FACTS

The following facts are not at issue. By deed dated and recorded January 31, 2001, the real property located at 27–29 Spring Street in Adams, Massachusetts, was granted to Paul A. Martel, Sr. and Annette M. Martel, husband and wife, as tenants by the entirety. That same day, the Martels gave the Bank a mortgage covering the property, which mortgage was duly recorded as well.

On August 25, 2006, after the Martels defaulted on the mortgage loan, the Berkshire Superior Court authorized the Bank to foreclose on the property. The property was sold at public auction for $160,000 on November 21, 2006, and thereafter, by deed dated December 21, 2006, was conveyed to James R. Wojcik and Tracey A. Wojcik.

From the $160,000 in proceeds, the Bank retained $94,683.47 in satisfaction of its mortgage loan and foreclosure costs. Then, on April 13, 2007, the Bank filed the instant interpleader action in the Berkshire Superior Court with respect to the balance, $65,316.53. Named as respondents in the action were the IRS and DOR, both of which held tax liens on the property.

The Martels were also named as respondents but have neither appeared nor asserted any claims against the fund. Paul Martel died on August 8, 2007.

The IRS removed the action to this forum. Although it took some time for the IRS and DOR to iron out the priority of their respective liens, as well as the amount of those liens and the per diem rate to be applied, those issues have all been resolved. The parties now agree to the following: (1) DOR's liens, arising out of the Martels' state tax liability, total $59,355.02 as of August 31, 2007, with a per diem accrual for interest and penalties after August 31, 2007; (2) the IRS's liens amount to $15,007.95 as of September 15, 2007, with interest and penalties accruing after September 15, 2007; and (3) DOR's tax liens have priority over the federal tax liens. As indicated, the Bank claims attorney's fees and costs of $6,734.97. As of February 27, 2008, the $65,316.53 originally deposited by the Bank has increased, with interest, to $66,689.78.

## II. DISCUSSION

The three pending motions raise the following central issue: whether, as asserted by the IRS, the federal tax liens are entitled to priority as a matter of law over the Bank's claim for fees and costs. In essence, the IRS contends that all proceeds in excess of the state tax liability should be distributed to it towards satisfaction of its liens and any award to the Bank for attorney's fees and costs cannot reduce the amount the IRS should recover in this action. In contrast, DOR has joined the Bank's motion for fees and costs, although, as described below, the precise scope of DOR's position is not clear. The court will outline and analyze these positions in greater detail after first sketching the legal landscape.[1]

---

1. It should be noted that DOR asserts no claim of sovereign immunity, thereby conceding the power of the court to resolve the parties' dispute in this forum. *Compare Hudson Sav. Bank v. Austin*, 479 F.3d 102, 108–09 (1st Cir.2007).

## A. *Legal Landscape*

Section 2410 of Title 28 of the United States Code creates jurisdiction in the district court of the subject matter "of interpleader or in the nature of interpleader with respect to real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(5). Interpleader actions, in turn, are governed by Fed.R.Civ.P. 22. Rule 22, however, makes no mention of costs or attorney's fees; nor, for that matter, does the interpleader statute, 28 U.S.C. § 2361.

The interpleader statute, however, does empower courts to "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. In that spirit, federal courts often award costs and attorney's fees to stakeholders in interpleader actions whenever it is fair and equitable to do so. Charles Alan Wright, Arthur L. Miller and Mary Kay Kane, 7 Fed. Prac. & Proc. Civ.3d § 1719 (2007) (hereinafter *"Wright, Miller & Kane"*) (citing cases). The reason for this "generosity toward the stakeholder," *id.*, was set forth in *Louisiana State Lottery Co. v. Clark*, 16 F. 20 (C.C.E.D.La.1883), where the court, referring to a stakeholder without fault himself but in possession of a fund claimed by contending parties, stated that there would be "no equity in compelling him to bear these charges" of "expenses and counsel fees in bringing the fund into court," *Clark*, 16 F. at 21. On the contrary, the court indicated, the parties who have benefited from the stakeholder's efforts should bear the costs incurred thereby. *Id.*

Courts in this district, too, have found that "[a] federal court has discretion to award reasonable costs and attorneys' fees to a stakeholder in an interpleader action." *Smith Barney, Harris Upham & Co. v. Connolly*, 887 F.Supp. 337, 346 (D.Mass. 1994) (citing *Wright, Miller & Kane*). *See also Ferber Co. v. Ondrick*, 310 F.2d 462,

467 (1 st Cir.1962) ("An interpleader fee is usually awarded out of the fund to compensate a totally disinterested stakeholder who has been, by reason of possession of the fund, subject to conflicting claims through no fault of its own.") (footnote omitted). As District Judge Tauro explained, typically such fees are available when the party initiating interpleader fulfills four preconditions, *i.e.*, "(1) is disinterested, (2) admits liability, (3) deposits the fund in the court, and (4) has asked to be relieved of any further liability." *Smith Barney*, 887 F.Supp. at 346 (citing *United Bank of Denver, Nat'l Ass'n v. Oxford Properties, Inc.*, 683 F.Supp. 755, 756 (D.Colo.1988)).

To be sure, given the discretionary character of the court's power, fees and costs have not been allowed as a matter of course. For example, the First Circuit in *Ferber* found no abuse of discretion in denying a stakeholder's request for attorney's fees when most of the stakeholder's efforts were expended in resisting a counterclaim as to which he was not disinterested. *See id.*, 310 F.2d at 467. *See also Massachusetts Bonding & Ins. Co. v. Antonelli Constr. Co.*, 173 F.Supp. 391, 393 (D.Mass.1959) (denying attorney's fees when interpleader was not "a strictly innocent or disinterested stakeholder"). Some courts, in fact, have deemed certain interpleader proceedings part of the ordinary course of business, the costs of which should be borne by the stakeholder. *See, e.g., Metropolitan Life Ins. Co. v. Holding*, 293 F.Supp. 854, 858 (E.D.Va.1968) (citing *Travelers Indem. Co. v. Israel*, 354 F.2d 488 (2d Cir.1965)). *See also Washington Mut. Bank v. MaCrae*, 18 Mass. L. Rptr. 499, 2004 WL 2809315, at **1–2 (Mass.Super.Ct. Nov. 17, 2004) (declining to award plaintiff-bank any reimbursement for legal fees or costs due to fact that interpleader action was filed purely on the basis of convenience and not necessity).

## B. *The Parties' Positions*

Here, there is no dispute amongst the parties that the Bank has fulfilled each of the four pre-conditions set forth in *Smith Barney*. Nor is there any dispute that, similar to the situation in *Equitable Life Assur. Soc'y v. Porter–Englehart*, 867 F.2d 79, 89 (1st Cir.1989), the Bank commenced this interpleader action in good faith as a procedural mechanism to protect itself from being "caught in the middle" of multiple lawsuits involving multiple claimants. Nor do any of the parties claim that the Bank should absorb its fees and costs as part of its ordinary business expenses. Rather, the IRS argues that, despite the general rule that fees and costs should be available to an interpleading party, the federal liens here are inviolable and cannot be reduced by fees and costs awarded to the stakeholder Bank. In essence, the IRS asserts that any proceeds in excess of DOR's prior liens should be distributed to the United States towards satisfaction of the Markels' tax liabilities under 26 U.S.C. § 6672 and that the federal tax liens are entitled to priority as a matter of law against any competing claim of the Bank for attorney's fees and costs.

In support of its position, the IRS relies first on the Tax Code itself, which provides that if any person neglects or refuses to pay a tax after demand, that amount (plus any interest, penalty, or costs which may accrue) shall be a lien in favor of the United States upon all property and rights of property, whether real or personal, belonging to the person. 26 U.S.C. § 6321. According to the Tax Code, the lien arises at the time the assessment is made and continues until the liability for the amount so assessed (or the judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of the lapse of time. 26 U.S.C. § 6322. In the instant matter, the IRS asserts, there is no dispute that it has fully vested liens on the excess proceeds from the foreclosure of the property, albeit subordinate to the liens of DOR.

The IRS also relies on a number of decisions which, based on the Tax Code, hold that a competing claim of a stakeholder for interpleader fees and expenses must give way and not infringe upon prior federal tax liens. *See, e.g., United States v. Chapman,* 281 F.2d 862, 870 (10th Cir. 1960); *Spinks v. Jones,* 499 F.2d 339, 340 (5th Cir.1974); *United States v. State Nat'l Bank,* 421 F.2d 519, 521 (2d Cir.1970).[2] Most critically, the IRS cites *United States v. Liverpool & London & Globe Ins. Co.,* 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955), and, in turn, *United States v. R.F. Ball Constr. Co.,* 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958), upon which many of these other decisions rely. Both of the Supreme Court decisions, the IRS asserts, stand for the proposition that an interpleader's costs and fees cannot impinge upon a federal tax lien.

For its part, the Bank argues that neither Supreme Court decision should be read in such a sweeping manner. The Bank also asserts that, given the court's discretion, it would be inequitable to deny such fees and costs here because the Bank's action actually served to protect the interests of both the IRS and DOR as

**2.** *See also Bridgewater Sav. Bank v. United States,* 42 A.F.T.R.2d. 78–5133, 1978 WL 4507, at *3, (D.Mass. May 11, 1978) (holding that two federal tax liens had priority as a matter of law over the competing claims for fees and costs of a stakeholder-bank). The court's ruling, however, did not, as a practical matter, adversely affect the stakeholder be-cause its fees and costs (reduced somewhat for reasons not germane to the instant action) were paid before the remaining amounts were distributed to the former owner of the property at issue. *See id.,* at **1–2. Nonetheless, the decision echoes the views of the other cited cases.

lien holders. The fact that the interpled funds may be insufficient to satisfy all creditors, the Bank maintains, should not adversely affect its rights as a disinterested stakeholder.[3]

### C. Analysis

At first blush, the Bank's arguments have some appeal, *i.e.*, the Supreme Court's decisions do appear distinguishable from the case at bar. *Liverpool*, for example, involved what was in essence a garnishment action and *R.F. Ball*, in turn, simply held (with no discussion whatsoever) that *Liverpool* controlled the claim for attorney's fees and costs there as well. A closer examination of both decisions, however, makes clear that the Supreme Court's rulings cannot be readily distinguished and, quite to the contrary, control the present situation.[4]

As for *Liverpool*, decided over fifty years ago, the underlying battle there does appear to have been one of priority between a writ of garnishment and a federal tax lien. *See id.*, 348 U.S. at 215, 75 S.Ct. 247. By way of background, the Fifth Circuit, in a two-to-one decision, decided that a garnishment writ had priority and that, in turn, a fee award to the stakeholder-insurance company which instituted the action was authorized by a Texas rule of civil procedure. *United States v. Liverpool & London & Globe Ins. Co.*, 209 F.2d 684, 687–88 (5th Cir.1953). On appeal, however, the Supreme Court determined that the federal tax lien was superior to the garnisher's lien and that the $500 awarded to the stakeholder-insurance company was, likewise, not entitled to priority. *Liverpool*, 348 U.S. at 217, 75 S.Ct. 247. As a result, the Supreme Court held, its payment was error. *Id.*

The Supreme Court's decision, however, cannot be confined to either a garnishment analysis or the state procedural rule. As the parties' underlying briefs make clear, the Court had specifically been asked to address whether the lower courts "properly allowed a fee for the services of the garnishee's attorney to be paid out of the fund impressed with the federal tax lien." Brief for the *United States*, 1954 WL 72790, at *1. *See also* Reply Brief for Respondent *Liverpool & London & Globe Ins. Co.*, 1954 WL 72792, at *1. That lien, by the way, arose out of the same Tax Code provisions at issue here. The United States argued that, whether senior or a junior, the federal lien "would be enough to prevail against the parties who had no lien whatever. Neither the garnishee nor its attorney had any interest in the fund, far less a protected prior lien." Brief for the *United States*, 1954 WL 72790, at *19. The United States also argued that "[t]he fact that payment of the garnishee's costs out of the attached fund has been sanctioned in some cases does not serve to give the garnishee any higher rights or any priority over an established lien holder." *Id.* "The crux of the matter," the United States continued, "is that the property belonged to the taxpayer at the time the tax lien became impressed upon it." *Id.*

For its part, the stakeholder-insurance company pursued many of the arguments

---

**3.** While it is common for a stakeholder to be dismissed "immediately following its deposit of the stake into the registry of the court," *Hudson Sav. Bank*, 479 F.3d at 107, the Bank has remained a party here in order to resolve the fee dispute.

**4.** It should be noted that other creative efforts to obtain attorney's fees on behalf of an inter-

pleader have been similarly rejected. *See, e.g., Millers Mut. Ins. Ass'n v. Wassall*, 738 F.2d 302, 304 (8th Cir.1984). ("There is nothing in the statute or the legislative history of the [Equal Access to Justice Act, 28 U.S.C. § 2412,] to indicate that Congress intended to override the priority of the United States to interpleaded funds under prior federal tax liens.").

which the Bank pursues here. It argued that the United States was "not able to find any statute which will prohibit the payment of this attorney's fee" and that "[t]he payment of an attorney's fee to an interpleader when the Government is claiming a tax lien is not without precedent." Reply Brief for Respondent, 1954 WL 72792, at *3 (citing *United States v. Ullman*, 115 F.Supp. 211 (E.D.Pa.1953)). In addition, the stakeholder-insurance company asserted, "as a matter of equity it would appear to us that a company in the position of respondent admitting its responsibility at all times should not be forced to the expense of paying its own attorney's fee." *Id.* The sole purpose of allowing an attorney's fee in the case of this character, the stakeholder-insurance company continued, "is to place the cost of litigation upon the party primarily responsible for it." *Id.* Unfortunately for the stakeholder-insurance company there— and the Bank here—the Supreme Court was not persuaded.

Notwithstanding this history, the trial court in *R.F. Ball*, in a decision following the Supreme Court's *Liverpool* decision by little more than a year, attempted to distinguish that ruling in ways similar to the Bank's efforts here. "There can be no question as to the status of Ball in this matter," the trial court stated:

> Ball was an innocent stakeholder confronted with conflicting claims to a fund which was in his hands, and he adopted the proper course of employing attorneys and tendering this money into court. As was said by the Supreme Court in its opinion therein, the *Liverpool* case had to do solely with the garnishee's fee under Rule 677 of the Texas Rules of Civil Procedure and did not purport to deal with an interpleader action under Texas Rule 43 or Rule 22 of the Fed. R. of Civ. P., 28 U.S.C.A, and it is therefore not controlling.

*R.F. Ball Constr. Co. v. Jacobs*, 140 F.Supp. 60, 62 (W.D.Tex.1956). The Fifth Circuit affirmed, *United States v. R.F. Ball Constr. Co.*, 239 F.2d 384 (5th Cir. 1956), but the Supreme Court reversed, albeit in a summary fashion, *R.F. Ball*, 355 U.S. at 587, 78 S.Ct. 442.

Lest there be any doubt about the Supreme Court's ruling in *R.F. Ball*, it must be understood that the interpleader fee issue was squarely presented to the Court. The United States, for its part, argued that the trial court was simply wrong when it distinguished *Liverpool* and that both the Fifth Circuit and the Supreme Court had in fact regarded *Liverpool* as an interpleader action. Brief for the *United States*, 1957 WL 87219, at **24–25. For its part, the stakeholder in *R.F. Ball*— again, anticipating what the Bank asserts here—argued that the *Liverpool* court had "adjudged the costs in accordance with the Texas Garnishment Rule of Procedure," that "[t]here is no similar statutory provision in Texas for taxing of costs in an interpleader action," and that, "[i]n both State and Federal courts, interpleader costs are usually paid out of the fund pursuant to long-established equitable principles." Brief for Interpleader *R.F. Ball Constr. Co*, 1957 WL 87079, at *3. The stakeholder then argued as follows:

> The stakeholder has no interest in the fund which he holds, and can neither win nor lose by the court proceeding. Hence, inasmuch as he cannot pay the money to one contesting party without running the hazard of liability to the other, courts have long recognized the interpleader process by which the stakeholder deposits the funds in the registry of the court. If he is a valid interpleader, then his costs and fees are paid out of the impounded funds. It would seem

unfair to tax interpleader fees against the loser of the contest over the fund. *Id.*, at **3–4.

In what surely must have dismayed the stakeholder, however, the Court held that its claim for fees and costs was controlled by *Liverpool. R.F. Ball,* 355 U.S. at 588, 78 S.Ct. 442. To be sure, the Court's decision on this point was all of one sentence. ("The claim of the interpleader for its costs is controlled by *United States v. Liverpool & London & Globe Ins. Co.,* 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268.") Still, for the reasons described, the intent—indeed, the import—of the Court's ruling cannot be ignored. As the Tenth Circuit later explained, "[t]he propriety of the allowance of costs, including a reasonable attorney's fee, to a plaintiff in an interpleader action is well recognized, but here this judicial prerogative collides with the supremacy of the federal tax lien." *Chapman,* 281 F.2d at 870 (footnote omitted). This court has little choice but to agree. Under *R.F. Ball* and *Liverpool,* as the Tenth Circuit found, "the innocent stakeholder, even though he asserts no right to the fund in dispute, may not recover his costs and attorney's fees when to do so would invade the paramount federal tax lien." *Id.* (footnote omitted). *See also Narragansett Bay Gardens, Inc. v. Grant Constr. Co.,* 176 F.Supp. 451, 455 (D.R.I. 1959) ("While it may be claimed that the denial of counsel fees and related costs in [*Liverpool* ] was based upon the peculiar provisions of the state statute there involved, I believe that any latent ambiguity therein is removed by the subsequent per curiam decision in *R.F. Ball.*"); *Ford Mo-*

*tor Co. v. Hackart Const. Co.,* 143 F.Supp. 216, 218 (D.N.J.1956) (finding no valid distinction between the Texas rule and the inherent equity power of a federal court with regard to interpleader fees).[5]

Interestingly enough, the IRS has offered a way in which the Bank could be paid its fees and costs without impinging on the federal liens. In essence, the IRS suggests, the Bank's interpleader fees and costs could be awarded out of the monies to be distributed to the superior lien holder, DOR. The court in *Chapman* suggested as much, opining that the inviolability of federal tax lien did not inure to the benefit of a claimant with a lien superior to the federal tax lien. *Id.,* 281 F.2d at 871.

It is not certain, however, whether DOR would readily agree to such a result. To be sure, DOR joined the Bank's petition for fees on the evident merit of the Bank's argument that, but for its efforts, the lien holders' interests, including DOR's, would not have been well protected. Yet neither the Bank nor DOR has made clear just how the Bank's fee would be paid. If the Bank's fee came off the top of the fund, which the court assumes is the Bank's position, there would be enough remaining to pay DOR's lien in full. For that reason, perhaps, DOR had more than enough reason to join the Bank's motion. That sequence of payments, however, would leave the IRS without any recovery and, for the reasons described, improperly impinge upon the inviolability of the federal tax lien. *See Spinks,* 499 F.2d at 340 ("In this case, the district court's fee award 'off the top' invaded the tax lien by reducing the

---

**5.** The court is not unaware of criticism directed at the IRS for taking fixed positions on the inviolability of federal tax liens. For example, in *Foxborough Sav. Bank v. Petrosian,* 84 F.Supp.2d 172, 174 (D.Mass.1999), District Judge Robert E. Keeton took the IRS to task for its "hard-edged position" and suggested that the court's equitable jurisdiction may

well trump the United States' interest in holding its lien inviolable. *See also Krulewich v. United States,* 74 A.F.T.R.2d 94–5995, 1994 WL 747885, at **2–5 (D.Mass. July 27, 1994) (Judge Keeton reaching similar conclusion). As described, however, there is little doubt that the federal tax lien is as inviolable as the IRS asserts.

amount which would therein be recoverable by the Government. The portion of an interpleaded fund that is subject to a Government tax lien cannot be reduced by an award of attorney's fees to the stakeholder for bringing the interpleader action."). If, on the other hand, DOR was paid in full first and the IRS second, the IRS would be paid only part of its liens since their total amount would be greater than the remainder; this is a consequence which the IRS fully understands and accepts. Nonetheless, there would be no improper impingement on the federal liens.

By joining the Bank in its motion, however, DOR no doubt recognized the Bank's equitable if not its legal position, namely, that its efforts in bringing the interpleader action should and can be awarded. Moreover, DOR has raised no claim, whether by statute or otherwise, that its own liens are as inviolable as the IRS's liens. Finally, DOR has not responded to IRS's suggestion that the Bank's fees could be paid directly out of DOR's share of the fund.[6]

For its part, the court hereby determines that payment of the Bank's fees out of DOR's recovery is authorized by Rule 22, the interpleader statute, 28 U.S.C. § 2361, and the court's equitable powers. In essence, the court concludes that the Bank should be awarded at least a portion of its fees and costs out of DOR's recovery, namely, that part which can fairly be attributed to DOR's share of the outstanding liens. In that way, the DOR would pay for the Bank's efforts expended on its behalf.

The court's conclusion—that the Bank be awarded that part of its fees and costs which can fairly be attributed to DOR's share of the outstanding liens—results in an award to the Bank (out of DOR's share) of $5,388. This amount constitutes 80% of the total fees and costs incurred by the Bank ($6,734.97). The 80% figure represents DOR's share of the total liens outstanding to both the IRS ($15,007.95) and DOR ($59,355.02) as of approximately August 31, 2007.[7] Taking into account adjustments for interest running on the liens since the amounts were originally provided to the court—which the parties themselves are now free to calculate—the court hereby orders that the remaining amount in the fund will first be paid to DOR (less the $5,388 to be paid to the Bank) and then to IRS. As indicated, distributions in this manner would in no way impinge on the federal tax liens.

### III. CONCLUSION

For the reasons stated, and within the parameters articulated above, the court hereby rules as follows: (1) DOR's motion for summary judgment is ALLOWED insofar as it seeks to establish the priority of DOR's liens over the IRS's liens; (2) the IRS's motion for summary judgment is ALLOWED insofar as it seeks to prevent the payment of fees and costs to the Bank to the extent such payment would infringe upon the federal tax liens; and (3) the Bank's motion for attorney's fees and costs, which DOR joined, is ALLOWED, but only to the extent that $5,388 of the

---

6. This is not without some practical precedent. In *Smith Barney*, for example, one of the potential claimants on the fund, Jane Connelly, had stipulated that any fees to be awarded the stakeholder would be paid from funds which would be awarded to her. *See id.*, 887 F.Supp. at 345–46. Accordingly, an award to the stakeholder would not reduce the claim of the United States. *See id.* at 346 n. 23. Thus, the United States' opposition to the stakeholder's motion for fees—on grounds that such an award would reduce its claims under its federal tax liens—was, in the end, immaterial.

7. As previously indicated, the state and federal liens were calculated on days approximately two weeks apart. In the court's view, the additional interest running on the liens would not affect the relative percentages of the lien.

274

requested fees and costs be paid out of DOR's share of the funds.

If DOR wishes to object to the court's authority to order the payment of the Bank's fees in the manner described, it shall set forth its reasons in a supporting memorandum by March 21, 2008, to which the Bank and/or IRS may respond by April 4, 2008. If—given the particular facts of this case—DOR is content to abide by the court's ruling, it shall so notify the other parties and, with the consent of those parties, provide to the court the figures to be distributed out of the fund as of March 28, 2008.

IT IS SO ORDERED.