SMITH BARNEY, HARRIS UPHAM & COMPANY, INC., Plaintiff,

v.

Jane CONNOLLY, Edward L. Reservitz, Ilene B. Belinsky, Timothy McInerney and The United States of America, Defendants.

Civ. A. No. 92–10714–JLT.

United States District Court, D. Massachusetts.

Nov. 16, 1994.

---

Robert D. Hillman, Richelle S. Kennedy, Bingham, Dana & Gould, Boston, MA, John R. Snyder, Bingham, Dana & Gould, Hartford, CT, for Smith Barney, Harris Upham & Co., Inc.

Edward L. Reservitz, Reservitz & Steinberg, Brockton, MA, Edward DeFranceschi, Michele B. Hogan, Boston, MA, for Jane Connolly, and Edward L. Reservitz.

Timothy McInerney, pro se.

Ilene B. Belinsky, Reservitz & Steinberg, Brockton, MA, Edward DeFranceschi, Michele B. Hogan, Boston, MA, for Ilene B. Belinsky.

John Lindquist, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## MEMORANDUM

TAURO, Chief Judge.

This is an interpleader action brought by plaintiff Smith Barney, Harris Upham & Company, Inc. ("Smith Barney") to resolve the competing claims of defendants United States and Jane Connolly to $361,824.00 (the "Interplead Funds") currently held for de-

fendant Timothy McInerney in a Boston Smith Barney Account (the "Account").

Presently before the court are the United States' and Connolly's cross-motions for summary judgment regarding the priority of their claims to the Interplead Funds. The court will also consider Smith Barney's motion for attorneys' fees and costs as well as the United States' motion in limine, contesting McInerney's ability to challenge the merits of his underlying tax liabilities in this action.

## I.

### Background

Plaintiff Smith Barney is a securities brokerage firm. Prior to this litigation, defendant Timothy McInerney of Derry, New Hampshire held an investment portfolio in Smith Barney's Boston office. This portfolio has since become subject to competing liens held by defendants Jane Connolly and the United States. Facing these adverse claims to McInerney's portfolio, Smith Barney liquidated the assets, placed the net equity in the Account and filed the present interpleader action. On July 22, 1993, the court granted a motion to interplead both the $361,824.00 held in the Account as well as the defendants' competing claims.[1] The primary issue now faced by the court is the proper distribution of the Interplead Funds.[2]

The United States asserts the priority of its 1981, 1983 and 1984 federal tax liens against McInerney totalling $128,314.22, plus statutory interest from October 15, 1993.[3] Connolly, who currently holds a judgment lien, admits the United States' 1983 lien has priority over her judgment lien. She, however, contests the priority of the 1981 and 1984 liens. Because the priority of these competing liens hinges on the timing of their cre-

ation and perfection, the court now reviews their history.

### A. Connolly's Judgment Lien

On September 25, 1985, a California Superior Court entered a $332,616.00 judgment against McInerney, in favor of Connolly.[4] While McInerney appealed, Connolly commenced an action in the Suffolk Superior Court in Massachusetts to enforce the California judgment against McInerney. On September 26, 1988, the Suffolk Superior Court temporarily enjoined McInerney and his agents and representatives from disposing of the investment securities then held in McInerney's Smith Barney account in any way. The next week, on October 3, 1988, this temporary restraining order became a preliminary injunction.

On May 11, 1989, during the pendency of the Suffolk Superior Court action, the California Court of Appeals affirmed the California Superior Court judgment. Then, on August 25, 1989, the Clerk of the Court of Appeals for the State of California for the 1st Appellate Division, Division 4, issued a Remittitur, certifying that the decision entered by the Court of Appeals was final (the "California Judgment").

Finally, on March 14, 1990, the Suffolk Superior Court entered judgment in Connolly's favor in the amount of $430,280.09 (the "Massachusetts Judgment"). The Court ordered Smith Barney to transfer certificates of ownership for all stocks, bonds and securities owned or held by McInerney or over which McInerney had power of attorney to either Connolly or her attorneys, defendants Reservitz and Belinsky. The Massachusetts Appeals Court affirmed the Massachusetts Judgment on December 23, 1991 and, thereafter, the Massachusetts Supreme Judicial Court denied further review. A final judgment and order in favor of Connolly was

---

**1.** Smith Barney was then dismissed from the present action for all purposes, except as to their claim for attorneys' fees and costs.

**2.** Defendants Edward L. Reservitz and Ilene B. Belinsky, defendant Connolly's attorneys, stipulate that they have no interest in the Interplead Funds. They, therefore, require no further consideration herein.

**3.** The United States stipulates that their federal tax liens for the years 1986–1991 do not have priority.

**4.** The underlying suit involved Connolly's deceased sister's probate estate.

entered on February 28, 1992. Then, on April 1, 1992, the Suffolk Superior Court issued an execution on the Massachusetts Judgment.

## B. *United States' Federal Tax Liens*

On September 24, 1984, defendant McInerney was assessed for his reported 1981 federal tax income liability in the amount of $141,593.00.[5] On December 2, 1985, he was similarly assessed for his reported 1984 federal income tax liability in the amount of $40,089.00.[6] Then, on October 16, 1989 and August 23, 1991 respectively, the Internal Revenue Service filed Notices of Federal Tax Liens for McInerney's unpaid federal income tax liability of 1984 and 1981 with the Town Clerk's Office, Derry, New Hampshire.

Based on these undisputed facts, the court now considers the proper disposition of the Interplead Funds.

## II.

### *Standard*

The standard for summary judgment in this circuit is well known. "Summary judgment is warranted where the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine factual dispute and the moving party [is] entitled to judgment as a matter of law." *Siegal v. American Honda Motor Co.*, 921 F.2d 15, 17 (1st Cir.1990); Fed.R.Civ.P. 56(c). "The moving party is entitled to judgment as a matter of law if the nonmoving party does not adduce enough evidence to permit a reasonable trier of fact to find for the nonmoving party on any element essential to its claim." *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir.1992).

Guided by this standard, the court now addresses the cross-motions for summary judgment.

5. McInerney was later assessed an additional audit deficiency in the amount of $36,089.65 plus interest and penalties on January 12, 1987.

6. McInerney was again assessed an additional audit deficiency in the amount of $6,452.00, plus interest and penalties on September 13, 1988.

## III.

### *Analysis*

## A. *Priority Between Liens (United States' and Connolly's Cross–Motions for Summary Judgment)*

Determination of the defendants' rights to the Interplead Funds turns on a two step inquiry. First, as a threshold matter, the court must assess whether the United States properly established its federal tax liens for 1981 and 1984. Failure to have done so would be fatal to the Government's case. Next, provided the Government met the requirements for creation of valid federal tax liens, the court must determine the defendants' liens' relative priority. Whether Connolly became a "judgment lien creditor" prior to the Government's filing Notices of Federal Tax Liens for 1981 and 1984 controls this issue.

### 1. *Creation of the 1981 and 1984 Federal Tax Liens*

Defendant Connolly first argues that the Government failed to properly establish federal tax liens which could be entitled to priority on the Interplead Funds. The Court disagrees.

Pursuant to Sections 6321 and 6322 of the Internal Revenue Code,[7] a federal tax lien arises automatically upon assessment and nonpayment of a tax liability, once notice of the assessments and demand for payment are duly given. 26 U.S.C.A. §§ 6321, 6322 (West 1989). The Code specifies that such notice "shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address." 26 U.S.C.A. § 6303 (West 1989).

 As proof of the satisfaction of its statutory notice and demand obligations, the United States submitted Certificates of Assessments and Payments for the tax years 1981 and 1984. These Certificates list a

7. Hereinafter, all Section references are to the Internal Revenue Code, Title 26 U.S.C.A. (West 1989), unless otherwise specified.

"First Notice" date for each assessment. Although defendant Connolly challenges the validity of this notice and demand, it is well established that Certificates of Assessments and Payments, listing "First Notice" dates for each assessment, are presumptive proof that the IRS gave notice of the assessments and made demand for payment. *Geiselman v. U.S.*, 961 F.2d 1, 6 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992). The United States, therefore, created valid federal tax liens for the years 1981 and 1984.[8]

To properly allocate the Interplead Funds, the court must now determine whether Connolly became a "judgment lien creditor" prior to the Government's filing its Notices of Federal Tax Liens.

### 2. *Lien Priority*

#### a. *Legal Framework*

■ Where there are competing claims to a delinquent taxpayer's property by a federal tax lien and a state-law lien, priority is determined by federal law. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Generally, "priority for purposes of federal law is governed by the common law principle that 'the first in time is the first in right.'" *United States v. McDermott*, —— U.S. ——, ——, 113 S.Ct.

1526, 1528, 123 L.Ed.2d 128 (1993) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)). This federal rule of priority is modified by Section 6323 of the Internal Revenue Code, which governs competition between federal tax liens and state-law judgment liens. 26 U.S.C.A. § 6323 (West 1989 & Supp.1994).

■ Under Section 6323(a), a federal tax lien is not perfected against a "judgment lien creditor" until Notice of a Federal Tax Lien is filed with the appropriate authorities in accordance with the requirements of Section 6323(f).[9] 26 U.S.C.A. § 6323(a) (West 1989 & Supp.1994). In other words, in order to be "first in right" over a "judgment lien creditor," Notice of a Federal Tax Lien must be filed "first in time." *See McDermott*, —— U.S. at ——, 113 S.Ct. at 1528 (1993); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 738, 99 S.Ct. 1448, 1463, 59 L.Ed.2d 711 (1979).

■ A "judgment lien creditor" is defined in the Treasury Regulations as "a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or a certain sum of money." Treas.Reg. § 301.6323(h)–1(g) (1976).[10] To qualify, a

---

**8.** In an attempt to quickly dispose of the United States' claims, defendant Connolly argues that the "mere assertion of 'first notice'" is insufficient to meet the notice and demand requirement and, therefore, the Government does not have a valid federal tax lien to assert against the Interplead Funds. In support of this argument, Connolly cites *Sherman B. Ruth, Inc. v. O.S.V. Marie and Winifred*, 150 F.Supp. 630 (D.Mass.1957). *Ruth*, however, merely holds that reference to notice and demand in a recorded Notice of a Federal Tax Lien is insufficient to meet the notice and demand requirement. This is not the factual scenario here. As described above, the Government has produced Certificates of Assessments and Payments indicating "First Notice." Accordingly, *Ruth* is not controlling.

**9.** Internal Revenue Code Section 6323(f) states in relevant part that notice must be filed:

In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated, except that State law merely con-

forming to or reenacting Federal law establishing a national filing system does not constitute a second office for filing as designated by the laws of such State....

26 U.S.C.A. § 6323(f)(1)(A)(ii) (West 1989 & Supp.1994). Personal property of a taxpayer is deemed to be situated:

at the residence of the taxpayer at the time notice of lien is filed.

26 U.S.C.A. § 6323(f)(2)(B) (West 1989 & Supp. 1994).

**10.** Treasury Regulations, Section 301.6323(h)–1(g) states in relevant part:

The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and

judgment holder must (1) "perfect[ ] a lien under the judgment on the property involved" according to "local law," Treas.Reg. § 301.6323(h)–1(g) (1976); *See United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), and (2) satisfy the "choateness" test set forth in *United States v. City of New Britain*, 347 U.S. at 84, 74 S.Ct. at 369, and Treasury Regulations Section 301.6323(h)–1(g), *See United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88–89, 83 S.Ct. 1651, 1654–55, 10 L.Ed.2d 770 (1963), such that "there is nothing more to be done to perfect." *Baybank Middlesex v. Electronic Fabricators, Inc.*, 751 F.Supp. 304, 310 (D.Mass. 1990).[11] Provided these conditions are met prior to filing of Notice of a Federal Tax Lien, the "judgment lien creditor" prevails.

#### b. *Application*

Connolly asserts perfection of a choate lien under her California Judgment pursuant to California law prior to the Government's filing of its Notices of Federal Tax Liens.[12] The United States counters, arguing that Connolly's California Judgment is irrelevant. Instead, the Government argues that, because Connolly failed to obtain and execute on a Massachusetts judgment prior to the filing of the United States' Notices of Feder-

al Tax Liens, her judgment lien was not properly perfected and therefore subordinate. As is apparent from the parties' conflicting arguments, resolution of this dispute turns on determining the applicable "local law" of perfection under the Treasury Regulations. The Treasury Regulations, however, do not specify what is "local law" when, as in this case, a **judgment** is in one state (California) while the **property** to satisfy the judgment is in another (Massachusetts).

Although the court has not discovered any decisions which definitively resolve the issue, relevant case-law suggests that "local law" refers to the law of the state where the lien is to be enforced. In *Cast Off, Inc. v. IRS*, 93–2 USTC, ¶ 50,458, 1993 WL 330535 (S.D.Ind.1993), the Southern District of Indiana held that the plaintiff, holder of a Florida state court judgment against debtors, was not a "judgment lien creditor" under Section 6323 vis-a-vis a parcel of land held by the debtors in Indiana.[13] In so ruling, the court looked to Indiana law, the state of enforcement, regarding the perfection of judgment liens, and not to Florida law, the state of the underlying judgment.[14] Similarly, in *S & S Gasket Company, Inc. v. United States*, 635 F.2d 568 (6th Cir.1980), the Sixth

---

the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into a judgment, even though under local law the lien of the judgment relates back to an earlier date ... If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

Treas.Reg. § 301.6323(h)–1(g) (1976).

**11.** The "choateness" test, as articulated in *United States v. City of New Britain* and Treas.Reg. § 301.6323(h)–1(g) (1976), requires that a state lien specifically set forth (1) the identity of the lienor, (2) the property subject to the lien, and (3) the amount of the lien.

**12.** In support thereof, Connolly maintains that the California Judgment was a valid judgment of a court of competent jurisdiction for a certain sum of money, and that the property subject to

the lien was established by her preliminary injunction in the Suffolk Superior Court.

**13.** Under Indiana law, a party holding a judgment from a state other than Indiana must file an action in an Indiana court to convert the foreign judgment to a judgment enforceable in Indiana. *Cast Off, Inc.*, 93–2 USTC at ¶ 50,458, 1993 WL 330535. The *Cast Off* court held that the plaintiff failed to convert its Florida judgment to a judgment enforceable in Indiana and, therefore, was not a "judgment lien creditor" under Section 6323. The plaintiff's lis pendens notice filed with the Clerk of the Indiana county where the debtor's real property was located did not render its Florida judgment enforceable, but served only to give notice of its interest in the property.

**14.** The court notes that *Cast Off, Inc.* is distinguishable in that it involves a lien on real property located in a non-judgment state, as opposed to a lien on personal property in a non-judgment state, as in our case. In spite of this discrepancy, the court has not found any authority suggesting that the proper "local law" of perfection should differ depending on whether the lien is on real as opposed to personal property.

Circuit analyzed an Alabama judgment creditor's priority to a debtor's funds which had been deposited in a Tennessee County Registry pursuant to the judgment creditor's Tennessee enforcement action. Again, even though the court here held that the plaintiff was a "judgment lien creditor" under Section 6323, the court looked to Tennessee law, the state of enforcement, to rule the plaintiff's judgment lien was properly perfected.[15] Thus, although the above courts did not explicitly hold that "local law" refers to the law of the state of enforcement, a logical consideration of their holdings and of the relevant regulatory language so suggests.[16] Because Connolly must seek enforcement in Massachusetts, the site of the property at issue, the court will apply Massachusetts' "local law" of perfection.

■■■■ Under Massachusetts law, "the judgment of a State court which had jurisdiction of the parties and the subject matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered, and be equally conclusive upon the merits. . . ." *First National Bank of Houma v. Bailey*, 29 Mass.App.Ct. 193, 558 N.E.2d 1153, 1157 (1990) (quoting *Wright Mach. Corp. v. Seaman–Andwall Corp.*, 364 Mass. 683, 307 N.E.2d 826, 830 (1974)). But, despite this recognition accorded foreign judgments, Massachusetts does not grant such judgments automatic in-state enforcement. Rather, pursuant to Massachusetts General Laws ch. 235, § 14:

[i]f a judgment is rendered for the plaintiff by a court in an action founded on a judgment rendered by a court outside of the commonwealth, execution shall not issue until the plaintiff files with the court rendering the judgment in the later action a transcript of the record of the judgment in the earlier case. . . .

M.G.L.A. ch. 235, § 14 (West 1986).

This language indicates that to execute on a foreign judgment in Massachusetts, the plaintiff must have a Massachusetts judgment.[17] Because Connolly's California Judgment, without more, is not enforceable in Massachusetts, the court finds that Connolly can't rely on her California Judgment to establish a perfected and choate judgment lien on the Interplead Funds in the Massa-

---

**15.** The *S & S Gasket* court held that, because the plaintiff "obtained a judgment in Alabama, filed its Alabama judgment in Tennessee and had the amount of its Alabama judgment deposited in the Tennessee court's Registry before the government filed its tax lien . . . [the plaintiff] held a valid judgment lien." *S & S Gasket Company, Inc.*, 635 F.2d at 570–71.

Although the Sixth Circuit did not explicitly declare which state's law it relied on in making this determination, the court interprets the opinion as relying on Tennessee law.

**16.** This interpretation of Treasury Regulations Section 301.6323(h)–1(g) accords with federal decisions regarding the creation of liens. Federal courts have consistently held that a judgment does not by its own force create a lien on property in another state. In fact, the Supreme Court has stated that "foreign judgments are not liens and are not entitled to execution in the state to which they are brought." *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276, 56 S.Ct. 229, 233, 80 L.Ed. 220 (1935). *See also Carpenter v. Wabash Ry. Co.*, 103 F.2d 996, 1000 (8th Cir. 1939) ("[a] judgment of one state when sought to be enforced in another, is not entitled to any right of priority, privilege, or lien which it may enjoy in the state where rendered, but only that which the lex fori may give to it in the character

of a foreign judgment"), *judgment vacated by Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (judgment vacated on other grounds due to an intervening change in law).

**17.** Massachusetts law is distinguishable from the Uniform Enforcement of Foreign Judgments Act, 1964 Revised Act (the "UEFJA"). The UEFJA specifies automatic in-state entry of a foreign judgment. An in-state judgment is not required to enforce the foreign judgment. In particular, the UEFJA states:

A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the Clerk of any [District Court of any city or county] of this state. The Clerk shall treat the foreign judgment in the same manner as a judgment of the [District Court of any city or county] of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a [District Court of any city or county] of this state and may be enforced or satisfied in like manner.

UNIFORM ENFORCEMENT OF FOREIGN JUDGEMENTS ACT § 2, 13 U.L.A. 154 (1964).

chusetts Account.[18] *See Cast Off, Inc. v. IRS*, 93–2 USTC, ¶ 50,458, 1993 WL 330535 (S.D.Ind.1993). A Massachusetts judgment is necessary.

 Connolly did receive a Massachusetts Judgment on March 14, 1990, prior to the Government's filing of its Notice of a Federal Tax Lien for 1981. But, she still cannot prevail. A Massachusetts judgment alone is not sufficient to create a perfected and choate judgment lien. A judgment creditor must also have filed a writ of attachment in the appropriate registry of deeds. *L. Rudolph Electrical Co., Inc. v. Gibbs Oil Company*, 16 Mass.App.Ct. 995, 454 N.E.2d 1288 (1983). It is this writ of attachment which later becomes a perfected and choate lien by a judgment awarded and recorded. *See* M.G.L.A. ch. 223, § 42 (West 1986); M.G.L.A. ch. 235, §§ 34, 36 (West 1986); *See also Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir.1956). Connolly makes no mention of filing a writ of attachment in the Registry. Instead, it appears as if the Interplead Funds first became subject to the Massachusetts Judgment on April 1, 1992, after the Suffolk Superior Court's execution. Connolly's attained a perfected and choate judgment lien, becoming a "judgment lien creditor," only at this time.[19]

Pursuant to this analysis, the Government's 1984 and 1981 tax liens have priority over Connolly's judgment lien. The Government properly filed its Notices of Federal Tax Liens for the plaintiff's unpaid 1984 and 1981 tax liability pursuant to Section 6323(f) on October 16, 1989 and August 23, 1991 respectively, prior to the April 1, 1992 execution on Connolly's Massachusetts Judgment.

 Although the Suffolk Superior Court did issue a preliminary injunction on October 3, 1988, before the Government's filing, this preliminary injunction at most created an equitable lien. *See United States v. Shearer*, 243 F.Supp. 433, 436 (D.Mass.1965) (restraining order no more than an equitable lien). Such an equitable lien is inchoate and does not cut off the Government's lien. *Shearer*, 243 F.Supp. at 436.[20]

### B. *Interpleader Plaintiff Smith Barney's Motion for Attorneys' Fees and Costs*

Plaintiff Smith Barney requests that the court award it attorneys' fees and costs incurred in bringing the present interpleader action, totaling $15,382.35.[21] Although defendant Connolly has stipulated that any

---

18. Connolly relies on *S & S Gasket* and *Bank of California, Nat. Ass'n. v. United States*, 520 F.2d 302 (9th Cir.1975), to argue that her California Judgment, in combination with her Suffolk Superior Court preliminary injunction, established a perfected and choate judgment lien on the Massachusetts property. But, both *S & S Gasket* and *Bank of California* applied the local law of the state of enforcement, Tennessee and Oregon respectively, in arriving at their disposition. Because both states had adopted the UEFJA at the time of judgment, they accorded almost immediate in-state lien effect to foreign judgments. Massachusetts, however, has chosen not to adopt the UEFJA and requires an in-state judgment to create a judgment lien.

Moreover, the *S & S Gasket* court's ruling is factually distinguishable from the present case. *S & S Gasket* did hold that the plaintiff was a "judgment lien creditor." Its decision, however, was based not only on the plaintiff's foreign judgment, filed in a Tennessee, but also on the deposit of the amount of the foreign judgment in the Tennessee court's Registry. In the present case, the Interplead Funds have not yet been deposited with the court, although the interpleader plaintiff Smith Barney stands ready to do so.

19. Treasury Regulations, Section 301.6323(h)–1(g) specify, "[i]f under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved." Treas.Reg. § 301.6323(h)–1(g) (1976).

20. In addition, Connolly is not entitled to priority as a "judgment lien creditor" under the relation back doctrine. Treasury Regulations, Section 301.6323(h)–1(g) state "a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date." Treas.Reg. § 301.6323(h)–1(g) (1976); *See also United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). Any equitable lien held by Connolly falls into this prohibition. *See Smola v. Camara*, 16 Mass.App. Ct. 908, 449 N.E.2d 678, 679 (1983).

21. Of the $15,382.35 requested, $14,772.00 represent attorneys' fees and $610.35 represent expenses.

"fees"[22] awarded Smith Barney will be paid from funds awarded to her, she objects to several particular charges and contends that the remaining sum is unreasonable.[23] The court holds that, though Smith Barney is entitled to attorneys' fees and costs, the amount requested is excessive and subject to reduction at this court's discretion.

A federal court has discretion to award reasonable costs and attorneys' fees to a stakeholder in an interpleader action. WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (West 1986). Typically, such fees are available when the party initiating the interpleader (1) is disinterested, (2) admits liability, (3) deposits the fund in the court, and (4) has asked to be relieved of any further liability. *United Bank of Denver, Nat. Ass'n. v. Oxford Properties, Inc.,* 683 F.Supp. 755, 756 (D.Colo.1988). Smith Barney has fulfilled the above conditions.[24] Accordingly, it is entitled to a reasonable measure of those attorneys' fees and costs incurred in its effort to secure interpleader. WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (West 1986).

In setting a reasonable award of attorneys' fees and costs, courts typically consider the nature of the attorneys' work and the amount of time devoted to it. WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (West 1986). This analysis may include an evaluation of the following factors:

(1) whether the case is simple or involved; (2) whether the stakeholder performed any unique services for the claimant or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly protracted the proceedings.

WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (West 1986).

This is a complex case which involves multiple claims to the Interplead Funds. Smith Barney is a disinterested stakeholder who, in an effort to avoid multiple litigation and resolve these competing claims, voluntarily and in good faith offered its services to achieve a settlement and avoid the present litigation. But for the defendants' conflicting claims and their unwillingness to participate in efforts to resolve them, Smith Barney would not have been burdened with the present action. Accordingly, fees incurred by Smith Barney in attempting to negotiate a settlement, in preparing and filing the instant action, in effecting service of process, and in producing documents and responding to written interrogatories will be allowed.

The court, however, will not permit attorneys fees' and costs resulting solely from Smith Barney's pursuit of its own interests. *Chemical Bank v. Richmul Associates,* 666 F.Supp. 616 (S.D.N.Y.1987). Several factors thereby militate against granting Smith Barney's entire request. First, Connolly asserts that $1,996.10 of Smith Barney's fees relate to a 1993 claim by Connolly against

---

**22.** Although Connolly's stipulation only specifically refers to "fees awarded the Interpleader Plaintiff," her Opposition Memorandum containing the relevant stipulation addresses Smith Barney's request in its entirety, including both attorneys' fees and costs. The court, therefore, treats Connolly's stipulation as encompassing both attorneys' fees and costs.

**23.** The United States opposes Smith Barney's motion for attorneys' fees and costs only to the extent that such an award would reduce the United State's claims under its federal tax liens. *See U.S. v. R.F. Ball Const. Co., Inc.,* 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); *U.S. v. Liverpool & London & Globe Ins. Co.,* 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955); *Campag-*

*na–Turano, Bakery, Inc. v. United States,* 632 F.2d 39 (7th Cir.1980). Because defendant Connolly has stipulated that any fees awarded Smith Barney will be paid from funds awarded to her, an award to Smith Barney will not reduce the Government's stake. Rather, the only effect is to burden Connolly with Smith Barney's expenses and not the United States. *See U.S. v. Chapman,* 281 F.2d 862, 870–71 (10th Cir.1960). Accordingly, the Government poses no outstanding opposition to Smith Barney's request.

**24.** Although Smith Barney has not yet deposited the Interplead Funds with the court, it has requested that the court accept such deposit and stands ready, on the required court order, to deposit them into the appropriate registry.

Smith Barney.[25] Because any expenses incurred therein are solely concerned with Smith Barney's individual liability and are unrelated to its bringing the interpleader action, they are not proper elements of recovery and are hereby denied.

Second, Connolly objects to $5,100.87 charged for preparing Smith Barney's motion for interpleader and attorneys' fees, and $549.50 in additional charges related to Smith Barney's petition for fees. These objections also have some merit. Smith Barney's motion to interplead claims was in a sense duplicative. To the extent it asked the court to interplead the defendants' competing claims, accept deposit of the Interplead Funds and dismiss it from the present action, such relief was already requested in the complaint. Furthermore, costs incurred in seeking attorneys' fees are for Smith Barney's own benefit. Courts have denied recovery of attorneys' fees incurred primarily in the pursuit of attorneys fees "because of the serious risk of depletion of the interpleaded fund." *In re OEM Industrial Corporation*, 135 B.R. 247, 250 (Bankr.W.D.Pa.1991).

■ Nonetheless, the court is unwilling to deny these claims. Smith Barney's motion to interplead claims, although arguably unnecessary, was an understandable, cautionary tactic designed to ensure that it would not become further embroiled in the parties continued dispute over the Interplead Funds. In addition, the legal expenses incurred in pursuing attorneys' fees, although personal to Smith Barney, are a direct result of the claimants' refusal to settle and do not threaten to deplete the Interplead Fund. And so, the court will allow recovery of the challenged $5650.37.

Finally, Connolly asserts that $877.50 relating to Smith Barney's review of discovery conducted between Connolly and the IRS was unnecessary. But, given the complexity of the present litigation and the existence of prior threatened claims by the IRS and Connolly against Smith Barney on the Interplead Funds in the Account, such discovery review is within the court's contemplation and Smith Barney will not be denied reimbursement therefore.

Considering all the facts and circumstances involved, the court in its discretion fixes attorneys' fees and costs at $13,386.25.

## IV.

### Conclusion

For the foregoing reasons, the United States' motion for summary judgment is hereby ALLOWED, Connolly's cross-motion for summary judgment against the Government is hereby DENIED, and plaintiff's motion for attorneys' fees and costs is hereby ALLOWED in the amount of $13,386.25.

In accordance with the above memorandum, the Interplead Funds are to be disbursed until depleted in the following order of priority: (1) United States' 1983 federal tax lien, (2) United States' 1984 and 1981 federal tax liens, and (3) Connolly's judgment lien. Smith Barney's costs and attorneys' fees are to be paid from Connolly's recovery. Defendant McInerney has no priority to the Interplead Funds, being subordinate to the United States by virtue of the federal tax liens [26] and subordinate to Connolly by virtue of Connolly's now final California and Massachusetts judgments.[27]

The parties shall submit affidavits detailing the amount of their respective liens, plus statutory interest, in order that the court may specifically divide the Interplead Funds.

An order will issue.

25. Connolly alleged that Smith Barney improperly paid out dividends and interest to McInerney on the Account, in violation of the Suffolk Superior Court order.

26. Because there is no waiver of sovereign immunity for a taxpayer to challenge the merits of his assessed tax liabilities in an interpleader action, McInerney cannot contest the merits of his assessed tax liabilities here. *Middlesex Savings Bank v. Johnson*, 777 F.Supp. 1024, 1030 (D.Mass.1991).

27. McInerney's claim to avoid the California Judgment against him was exhausted when the Massachusetts Court of Appeals denied his appeal as "so totally lacking in merit that we have no choice but to deem them frivolous." *Connolly v. McInerney*, 31 Mass.App.Ct. 1120, 583 N.E.2d 907 (1991).