Lauriat, J.
This is an action to establish title to certain proceeds now in the possession of a secured party. Before the court is the renewed motion of plaintiff, Virón International Corporation (“Virón”) for summaiyjudgment. Virón renewed its summaiyjudgment motion after the intervenor, Steven T. Greene, Trust Mortgagee (the “Trust Mortgagee”), filed and served a complaint to intervene pursuant to a court order of August 28, 1997 (Sikora, J.). State Street has also moved for summaiyjudgment on Count II (declaratory judgment) and Count III (conversion) of Viron’s *601 verified complaint. Defendants, Baker Brothers/Systems, a Division Of Systems Engineering and Manufacturing Corporation (“Baker”), and Systems Engineering and Manufacturing Corporation (“Systems Engineering”), also oppose Viron’s motion for summary judgment.
For the following reasons, Viron’s motion for summary judgment is denied.
BACKGROUND
A.The Underlying Dispute
Virón is a corporation headquartered in Michigan. Baker, a division of Systems Engineering, is a corporation headquartered in Massachusetts. Baker, as a general contractor, agreed to provide labor, equipment, and material to make improvements to real property owned by Raytheon Aircraft Company (“Raytheon”), a Kansas corporation. Baker hired Virón as a subcontractor on the project. Virón was to provide materials, engineering drawings, equipment, and installations to be used by Baker in connection with the Raytheon project.
Pursuant to its project contract with Baker, Raytheon paid Baker $4.5 million between December 7, 1995 and July 17, 1996 for labor and materials. Raytheon made all payments directly to a lock box at State Street Bank and Trust Company. Included in this amount was a payment for the materials and equipment provided to Baker by Virón.
B.Systems Engineering’s “Private” Bankruptcy
Systems Engineering was evidently in financial trouble when, on July 29, 1996, a meeting of its creditors,[1] including Virón, was held in Boston, Massachusetts. One of Systems Engineering’s creditors was State Street, which was the holder of promissory notes (the “notes”) dated March 31, 1993 that were executed by Systems Engineering in the aggregate amount of $5,791,000. The notes were secured by a security interest in all of the assets of Systems Engineering pursuant to the terms of a Security Agreement dated January 20, 1989, and a first mortgage on Systems Engineering’s real estate. State Street’s security interest encompassed the assets of Baker, a subsidiary of Systems Engineering. State Street perfected its security interest by filing UCC-1 Financing Statements on January 18, 1989, and January 20, 1989 as continued on October 21, 1993.[2]
At the Boston meeting of creditors, all of Systems Engineering’s creditors were asked to consent to a Trust Mortgage on the assets of Systems Engineering. Although it is unclear from the record, apparently Systems Engineering’s creditors, with the exception of Virón,[3] agreed to the Trust Mortgage and entered into a Trust Indenture and Security Agreement (“the Agreement”). Under the Agreement, Steven T. Greene (hereinafter, “the Trust Mortgagee”), the intervenor in this case, was appointed Trust Mortgagee and received a security interest in the assets of Systems Engineering. The Trust Mortgagee filed the appropriate UCC-1 Financing Statements on July 31, 1996.
C.The Michigan Action
To protect its interests, Virón filed suit against Baker on July 26, 1996, in the 30th Judicial Circuit Court for the County of Ingham, Michigan, seeking the $237,753 owed under the contract between Virón and Baker. Virón claimed it was entitled to the money based on the Michigan Builder’s Contract Fund (“the Michigan Act”) which provides in relevant part:
In the building construction industry, the building contract fund paid by any person to a contractor . . . shall be considered by this act to be a trust fund, for the benefit of [(1)] the person making the payment, [and (2)] contractors, laborers, subcontractors or materialmen, and the contractor . . . shall be considered the trustee of all proceeds so paid to him for building construction purposes. Mich. Comp. Laws §570.151 et seq. Mich Stat Ann. §26.331 et seq.
Virón claimed that under the Michigan Act, certain payments made by Raytheon to Systems Engineering under the project contract were, in actuality, held in trust by Systems Engineering for the benefit of Virón. Baker and Systems Engineering received notice of the Michigan lawsuit on September 3, 1996.
State Street has alleged that the funds which Virón claims are held in constructive trust under the Act are actually a part of Systems Engineering’s assets which were sold to satisfy its debt to State Street. Subsequently, Virón and State Street entered into a letter agreement dated September 17, 1996, under which State Street agreed to deposit $237,753 into an escrow account pending a court’s determination of the lawful disposition of such proceeds. The letter agreement further provided that on November 1,1996, the escrow proceeds would automatically be released from escrow to State Street unless the parties agreed to the disposition of the proceeds, or Virón obtained a court order directing some different disposition of the proceeds.
D.The Michigan Judgment
On October 25, 1996, the Michigan Court entered a default judgment against Baker in favor of Virón in the amount of $241,101.96, representing the principal amount of Viron’s breach of contract claim against Baker plus interest and costs (the “Michigan judgment”). Notice of the Michigan judgment was served upon Baker by certified mail, return receipt requested, on October 3, 1996. No notice was sent to either State Street or the Trust Mortgagee.
By October 29, 1996, Virón and State Street had failed to determine the disposition of the escrow proceeds. Accordingly, Virón commenced the present action to enforce its Michigan judgment. On November 1, 1996, Virón obtained a temporary restraining order in the Superior Court enjoining State Street from disbursing the escrow proceeds. On November 20, *602 1996, the parties entered into another agreement whereby State Street was permitted to disburse the escrow funds, but was required to make sufficient proceeds available to satisfy any judgment Virón obtained in its favor pursuant to the Michigan judgment. The parties also agreed, although it is now disputed by Virón, that the parties’ rights in any fund paid by Raytheon to State Street were to be determined based on the facts in existence as of November 12, 1996.
On December 11, 1996, after notice to Baker and State Street, Virón moved the Michigan Court for an order clarifying its judgment against Baker. The Michigan Court entered an Order Clarifying a Certain Judgment Dated October 3, 1996,[4] which stated in pertinent part:
[A]s a final result of the Judgment entered on October 3, 1996, in favor of plaintiff and against defendants, jointly and severally, it is hereby concluded, determined and adjudged as follows: . . .
(e) As a result of the submission of invoices for payment transmitted by defendants to Raytheon, Raytheon has paid to defendants, in an amount equal to or greater than $237,753.00 proceeds on account of such goods manufactured by Virón; and
(f) Pursuant to MCL 570.151 et seq.; MSA 26.331 et seq., (the “Michigan Builder’s Contract Fund Act”), as well as the terms of the contract between Virón and defendants, those proceeds paid by Raytheon to defendants constitute an unconditional trust fund for the benefit of Virón, for that work and/or services provided by Virón to defendants and/or Raytheon and for which Raytheon has paid proceeds to defendants; to wit, an amount equal to or greater than $237,753.00 . . .
On May 6, 1997, Virón moved for summary judgment in this court, seeking to enforce the Michigan judgment and to establish its claim to the disputed proceeds. In response, Baker and Systems Engineering claimed that State Street and/or the Trust Mortgagee was entitled to the proceeds. In addition, the Trust Mortgagee served a motion to intervene and an opposition to Viron’s summary judgment motion. The Trust Mortgagee claimed that either it or State Street was entitled to the disputed proceeds.
On June 13, 1997, State Street served its opposition to Viron’s motion for summary judgment, but claimed that Systems Engineering’s obligation to State Street had been paid and that State Street no longer claimed an interest to the disputed proceeds. Consequently, on August 14, 1997, during oral arguments on Viron’s motion for summary judgment, the Trust Mortgagee claimed an interest in the escrow proceeds under the Trust Indenture and Security Agreement.
On August 28, 1997, the Superior Court (Sikora, J.) allowed the Trust Mortgagee to intervene in this action. On the same date, the court (Sikora, J.) entered an order denying Viron’s motion for summary judgment as premature in light of the Trust Mortgagee’s intervention. The Trust Mortgagee filed and served an intervenor’s complaint on September 18, 1997. Virón has now renewed its motion for summary judgment.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.RCiv.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case, or “by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Count II of Viron’s verified complaint seeks a declaratory judgment against State Street and the Trust Mortgagee. Virón seeks a declaration of the rights of the parties under the Michigan Act with respect to either the $273,753 of the proceeds of the asset sale to Surface Finishing or to any proceeds paid by Raytheon to Baker pursuant to its contract. Count III of Viron’s verified complaint seeks damages for conversion against State Street and the Trust Mortgagee.
I. DECLARATORY JUDGMENT (COUNT II)
Virón asserts that the October 2, 1996, Michigan default judgment is entitled to full faith and credit in the courts of Massachusetts, and that summary judgment should enter in its favor. In support of this argument, Viron cites G.L.c. 235, §23A, which requires this court to recognize a foreign judgment. State Street and the Trust Mortgagee counter that they are entitled to summary judgment on Count II because Virón has not obtained a Massachusetts judgment enforcing the Michigan judgment, and in any case, the Michigan judgment cannot be enforced as against them.
Summary judgment must be entered against Virón on Count II for the following three reasons: (1) Virón *603 never obtained a Massachusetts judgment enforcing the Michigan default judgment; (2) State Street and the Trust Mortgagee were not subject to the personal jurisdiction of the Michigan court, and thus the Michigan judgment does not collaterally estop them from asserting their perfected security interests; and (3) even if the court recognized the Michigan judgment, Viron’s claim would be subordinate to the perfected security interests of State Street and the Trust Mortgagee. The court discusses each of these three reasons below.
A.Default Judgment
The Michigan default judgment does not require summary judgment in Viron’s favor. In Massachusetts, a foreign judgment is not entitled to recognition unless the plaintiff follows certain procedural requirements pursuant to G.L c. 235, §14. In essence, Virón must obtain a Massachusetts judgment to enforce its foreign default judgment. Id; see also Smith Barney, Harris Upham & Company, Inc. v. Connolly, 887 F.Supp. 337, 344-45 (D.Mass. 1994). Virón has not reduced its Michigan default judgment to a Massachusetts judgment, therefore, under Massachusetts law, the Michigan judgment is not entitled to automatic full faith and credit. Accordingly, Virón is not entitled to summary judgment. Rather, Virón remains an unsecured creditor under Massachusetts law, until it obtains a Massachusetts judgment to enforce the Michigan judgment.
B.Personal Jurisdiction and Collateral Estoppel
The Michigan default judgment is also not binding upon State Street and the Trust Mortgagee. Although the Michigan court had personal jurisdiction over Baker pursuant to a forum selection clause contained in the contract between Virón and Baker, there is no evidence in the summary judgment record to suggest that either State Street or the Trust Mortgagee were subject to the personal jurisdiction of the Michigan court.[5] Because the Michigan court did not have personal jurisdiction over State Street or the Trust Mortgagee, the Michigan judgment cannot be enforced against them. See Quinn v. Quinn, 5 Mass.App.Ct. 794 (1977). Accordingly, this court will not recognize Viron’s foreign default judgment as binding against State Street or the Trust Mortgagee.
Virón argues that even if the Michigan judgment is not technically recognized by this court, the Michigan default judgment against Baker has a preclusive effect that binds the defendants and requires summary judgment in Viron’s favor. The court disagrees. “When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether the same or a different claim.” Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 372 (1985), quoting Restatement (Second) of Judgments §27 (1982). The elements necessary for a nonparty to be bound by a prior adjudication — identical issues, adjudication on the merits, and privily between the parties against whom collateral estoppel is being asserted — are absent from the present case. Instead, the issue before the court is which creditor has the superior claim to the disputed proceeds. In addition, the Michigan judgment was not decided on the merits. Finally, State Street and the Trust Mortgagee’s interests are dissimilar to Baker’s interests. Therefore, the court concludes that the Michigan default judgment has no preclusive effect on the issue of which creditor has a superior claim to the disputed proceeds, and it cannot be considered as final judgment on the merits against either State Street or the Trust Mortgagee. See Fay v. Federal Nat’l Mortgage Assoc., 419 Mass. 782, 790 (1995).
C.Lien Priority
Finally, Virón cannot gain lien priority over State Street or the Trust Mortgagee. Assuming the Michigan judgment was enforceable in Massachusetts, the court would be faced with a conflict over whether to apply Massachusetts secured transactions law or the Michigan Act to determine what proceeds Virón would be entitled to. When presented with a conflicts of law issue relating to secured interests, the significant factors test is applicable. Restatement (Second) of Laws, §§251, 252. Under the significant factors test, the law of the state with the most significant relationship to the property, security interest, and parties, is the law that pertains. Id.
Here, the significant factors test dictates that Massachusetts law applies. State Street and the Trust Mortgagee are Massachusetts residents. State Street’s security interest and the Trust Mortgagee’s security interest are located in Massachusetts. The disputed proceeds are also in Massachusetts. Accordingly, the significant factors test favors application of Massachusetts law.
In turn, Massachusetts secured transactions law favors perfected secured parties who file first, therefore State Street would have a superior claim to Viron’s unperfected judgment lien. G.L.c. 106, §9-301. State Street filed its UCC-1 Financing Statements securing its security interest in Systems Engineering’s assets, including Baker, on January 18 and 20, 1989, and continued its Financing Statements on October 21, 1993. Therefore, as aperfected secured party who filed first, State Street’s claim is superior to Viron’s claim. Similarly, the Trust Mortgagee would have a superior interest to Viron’s claim because it filed a UCC-1 Financing Statement on July 31, 1996. Virón, on the other hand, obtained a Michigan judgment lien against Baker on October 25, 1996. Therefore, State Street and the Trust Mortgagee filed their Financing Statements first, and Viron’s claim to the disputed proceeds is subordinate. Even if Virón obtained a Massachusetts judgment enforcing the Michigan de *604 fault judgment, it could not have filed before either State Street or the Trust Mortgagee. See G.L.c. 106, §9-103.
Accordingly, Viron’s motion for summary judgment must be denied. In addition, based on the foregoing analysis, the court concludes that State Street and the Trust Mortgagee, having demonstrated that as a matter of law they are perfected secured parties who filed before Virón, an unsecured creditor, are entitled to summary judgment on Count II of Viron’s verified complaint.[6]
II. CONVERSION (COUNT III)
Virón also seeks summary judgment on its claim for conversion (Count III). “Conversion is the intentional interference and wrongful exercise of control, ownership or dominion over personal property which seriously interferes with the rights of another to control the property.” Alperin & Shubow, 14C Massachusetts Practice §20.51. Based on the above conclusion that State Street and the Trust Mortgagee have superior security interest in the assets of Systems Engineering, the court determines that Virón cannot show that it was ever entitled to the disputed proceeds, and thus it cannot prove an essential element of its conversion claim against either State Street and the Trust Mortgagee. State Street had a perfected security interest in Systems Engineering’s assets (including Baker) and was entitled to the proceeds from the voluntary sale of Systems Engineering’s assets. See, e.g., Kennedy v. Glenson Bros, Inc., 14 Mass.App.Ct. 367 (1982). Accordingly, summary judgment must be entered in favor of State Street on Count III. See Kourouvacilis, 410 Mass. at 716.
The Trust Mortgagee is also entitled to summary judgment in its favor on Viron’s conversion claim. Virón presents no evidence that the Trust Mortgagee wrongfully converted proceeds to which Virón was entitled. The Trust Mortgagee became a lien creditor through the voluntary assignment by Systems Engineering of its assets in order to benefit its creditors. Virón failed to protect its claim to the disputed proceeds before the Trust Mortgagee filed a Financing Statement, thus the Trust Mortgagee is entitled to summary judgment as a matter of law on Count III.
ORDER
For the foregoing reasons, Viron’s Renewed Motion For Summary Judgment is DENIED, and State Street Bank and Trust Company’s Cross-Motion for Summary Judgment on Counts II and III is ALLOWED. It is further ORDERED that summary judgment enter in favor of Steven T. Greene, Trust Mortgagee, on Counts II and III of the Verified Complaint.

 Apparently Systems Engineering had about 300 creditors.

 Ultimately, Systems Engineering defaulted on the notes and the security agreement and surrendered its assets to State Street in September 1996. Under a Voluntary Surrender of Property and Consent to Sale agreement, Systems Engineering consented to the sale of its assets by State Street to Surface Finishing Technologies, Inc. for $1,300,000. Systems Engineering remained obligated to pay State Street $500,000.

 After reviewing the proposed Agreement, Viron’s legal counsel wrote the Trust Mortgagee a letter detailing its concerns regarding the imposition of a Trust Mortgage. The Trust Mortgagee responded on September 12, 1996 with a letter which suggested the Trust Mortgagee could not adapt the Trust Mortgage to Viron’s needs. As a result, Virón refused to consent to the Trust Mortgage.

 The court is uncertain as to what relevance a Michigan court’s order clarifying a default judgment has in this case; nevertheless, as discussed below, the court concludes that it is ultimately immaterial to the outcome.

 State Street and the Trust Mortgagee were not parties to the Viron-Baker contract, nor were either State Street or the Trust Mortgagee sued by Baker in Michigan. In addition, it should be noted that the Raytheon payments were made to State Street’s lock box in Massachusetts and thus were never subject to the Michigan court’s in rem jurisdiction.

 Although State Street and the Trust Mortgagee also argue that State Street is a holder in due course of the promissory notes as against Viron’s claims, the court, given the above analysis, does not reach that argument.